THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LESTER CARROLL et al., Defendants-Appellants.

First District (2nd Division) Nos. 1—89—2866, 1—90—0422, 1—90—1191, 1—90—1525 cons.

Opinion filed December 15, 1992.—Rehearing denied January 27, 1993.

Michael J. Pelletier and Kenneth L. Jones, both of State Appellate Defender's Office, of Chicago, for appellants Lester Carroll, Alan Papendik, and Brian Papendik.

Genson, Steinback & Gillespie, of Chicago (Marc W. Martin, of counsel), for appellant Richard Ausmus.

Jack O'Malley State's Attorney, of Chicago (Renee Goldfarb, Theodore Fotios Burtzos, Brian Clauss, and Susan Schierl, Assistant State's Attorneys, of counsel), for the People.

JUSTICE SCARIANO delivered the opinion of the court:

Defendants, Lester Carroll (Carroll), Alan Papendik (Alan), Brian Papendik (Brian), and Richard Ausmus (Ausmus), were given sepa-

rate jury trials and found guilty of attempt (murder), aggravated criminal sexual assault, aggravated battery, and aggravated kidnapping. Carroll, Alan and Ausmus were each given sentences of 40 years on the attempt (murder) conviction and 35 years on the aggravated criminal sexual assault conviction. Brian was sentenced to 20 years for attempt (murder) and 20 years for aggravated criminal sexual assault. All terms were to be served consecutively. The defendants appeal their convictions and their sentences.

On May 2, 1987, defendants were arrested and charged with the above-noted offenses which were committed in the early morning hours of April 15, 1987. The victim, S.S., a 16-year-old girl who was five months pregnant at the time, testified to the following events. On April 14, 1987, she had gone to her aunt's home on 35th Street and Western Avenue in Chicago. Her boyfriend had planned to pick her up at midnight, but when he later called to inform her that he would be late, she agreed to wait until she heard him sound his car horn.

At approximately 1 or 1:30 a.m., S.S. heard a car horn, but when she went outside, no one was there. Because she was locked out of the house, she went to a pay phone about a block away to call her aunt. On her way back to the house, defendants, who were in a car, began to harass her. Alan then got out of the car and forced her at gunpoint into the front seat. Carroll was driving the car, Brian was in the front passenger seat, and Alan and Ausmus were in the back seat. As they were riding in the car, the four men were drinking beer, all the while hitting S.S. and calling her names.

After driving for a long time, they exited the highway, stopped the car, and two or three of the men got out. Shortly thereafter, the men returned to the car and they continued onward. Carroll eventually pulled the car off the highway and stopped near a grassy field, which was later established to be near Joliet, in Will County. Alan, Brian and Ausmus then alighted from the car. S.S. attempted to escape, but Carroll grabbed her by the arm, pulled her back into the car, and told her that they were going to rape and kill her. At that point, Alan, Brian and Ausmus returned to the car. Carroll, Alan, and Ausmus then took S.S. into the field, where they beat her severely, and each of them took turns sexually assaulting her; more specifically, all three of the men forced S.S. to have vaginal, oral and anal intercourse with them. Additionally, Carroll tried to insert a bottle into S.S.'s vagina and rectum. Brian served as a lookout while the other three defendants sexually assaulted S.S., and he never had sexual contact with her.

After Alan, Ausmus and Carroll had sexually assaulted S.S., they

returned to the car, where Brian told them to kill her because he did not want to become involved with the police. Carroll, Alan and Ausmus then returned to where S.S. was lying, and Carroll told her that they were going to kill her because they did not want to get involved with police.[1] Carroll then choked S.S., Alan punched her repeatedly in the stomach, and Ausmus tried to suffocate her by stuffing her pants down her throat. Alan also told S.S. that he was going to kill her baby while he was squeezing and punching her stomach. The defendants then left S.S. for dead.

When S.S. regained consciousness later that morning, it was already daylight. She crawled to the highway to signal a passing car and was able to attract the attention of a motorist who called an ambulance which took her to Saint Joseph's Hospital in Joliet. She was admitted to the hospital where she stayed for two weeks and was treated for a fractured skull, a concussion, a broken jaw, a torn labia and a bleeding spleen.

Chicago police detective John Smith testified to the following events. On May 1, 1987, at approximately 2 p.m., Detective Smith and his partner, Detective Rusnak met Debbie Ausmus (Debbie), Richard Ausmus' stepmother, in an alley at 37th and Wood Streets. She told them that she had information that two weeks before, her stepson Richard, Brian and Alan Papendik, and another male by the name of Lester, abducted a white female from the area of 35th and Western, drove her to an area around Joliet, sexually assaulted and beat her, and then left her for dead. She described Lester as a white male in his twenties, and said that the automobile they used was a "blue beater" that belonged to Lester's sister, Kim. Debbie then showed the detectives the location of Alan Papendik's apartment.

Upon returning to the police station, Detective Smith called the Will County sheriff's office and was informed that they had investigated an incident that had occurred approximately two weeks prior in which the victim was abducted from 35th Street and Western Avenue in Chicago and was taken to a field near Joliet where she was sexually assaulted and beaten. After obtaining copies of the police report relating to this incident, which substantiated the information received from Debbie, Detective Smith obtained police photographs of the four assailants. On May 2, 1987, he contacted S.S. at her home and asked her to identify the men from an array of photographs. She

---

[1] Although S.S. did not testify to this statement at each of the defendants' trials, all four juries heard this evidence, as it was contained in each of the defendants' confessions that were read to the juries.

was able to identify Alan, Brian and Carroll, but not Ausmus.[2] Detective Smith, along with Detectives Foley and Meier, then went to Alan's residence and arrested him. Alan, after being "Mirandized," later directed the detectives to his brother Brian, and Alan told them that they could find Carroll there as well. When the detectives arrived at the indicated location, they noticed that parked out front was an automobile matching S.S.' and Debbie's descriptions of the vehicle with which S.S. was abducted. After knocking on the door of the apartment, a white female opened the door and identified herself as Kim Carroll (Kim), the owner of the apartment as well as the blue vehicle. With Kim's consent, the detectives entered the apartment and arrested Brian and Carroll. The detectives then went to 3528 South Hamilton and arrested Ausmus. At 6 p.m. on May 2, 1987, S.S. identified all four defendants in a lineup.

Shortly after their arrest, and after having been "Mirandized," defendants spoke separately to Detective Smith and made inculpatory statements regarding their involvement in the criminal activity. Defendants then were interviewed by Assistant State's Attorney Beth Herndobler, and each confessed to his participation in the crimes. More specifically, Carroll admitted to driving S.S. and the other defendants to the field and raping and beating her; he also admitted that he told S.S. that defendants had to kill her so she could not identify them. Alan admitted to being in the car with his three companions, sexually assaulting the victim and watching her being beaten by Ausmus and Carroll. Brian admitted that he forced S.S. into the car between himself and Carroll, that he rode to the field with the other three men who later sexually assaulted her, and that he saw Alan stuffing the victim's pants in her mouth while Carroll was choking her. Finally, Ausmus confessed to having been in the car with his three friends, but that Alan and Carroll sexually assaulted S.S. while he had his back to them. He stated that he may have sexually assaulted the victim as well, but that he was too intoxicated to remember; he also stated that Alan and Carroll were the ones who beat her.

Defendants were charged with more than 100 offenses, but by the time of trial, only 10 charges remained, all of which were alleged to have occurred in Cook County on April 15, 1987; and, as previously noted, each defendant was found guilty by separate juries of attempt (murder), aggravated criminal sexual assault, aggravated battery and aggravated kidnapping. At the hearings on aggravation, mitigation

---

[2]Detective Smith testified that after he arrested Ausmus, he noticed that Ausmus did not resemble the picture of him that he showed to S.S.

and sentencing, the trial court found that the aggravated battery and aggravated kidnapping charges merged into the other offenses, and sentenced Carroll, Alan and Ausmus to 40 years, and Brian to 20 years, for attempt (murder); Carroll, Alan and Ausmus were sentenced to extended terms of 35 years, and Brian to 20 years, for the aggravated criminal sexual assault, all sentences to run consecutively

I

In their first assignment of error, defendants assert that the State failed to prove the element of venue beyond a reasonable doubt for each of the offenses of which they were convicted.

Our supreme court has invariably held that venue is a material allegation which the State must prove beyond a reasonable doubt along with the other elements of an offense. (*People v. Hagan* (1991), 145 Ill. 2d 287, 300, 583 N.E.2d 494, 500; *People v. Allen* (1952), 413 Ill. 69, 76, 107 N.E.2d 826, 829; *People v. Pride* (1959), 16 Ill. 2d 82, 86, 156 N.E.2d 551, 553; *People v. Church* (1937), 366 Ill. 149, 158, 7 N.E.2d 894, 898; *People v. Gregor* (1935), 359 Ill. 402, 194 N.E. 550; *People v. Kubulis* (1921), 298 Ill. 523, 528, 131 N.E. 595, 597; *People v. O'Cara* (1915), 271 Ill. 138, 142, 110 N.E. 828, 829.) This substantive element of venue differs from the related and equally well-established procedural aspect of venue, which, in Illinois, means that although criminal cases are to be tried in the county where the offense was committed (Ill. Const. 1970, art. I, § 8), "all objections of improper place of trial are waived by a defendant unless made before trial." (Ill. Rev. Stat. 1987, ch. 38, par. 1—6(a); *People v. McClellan* (1977), 46 Ill. App. 3d 584, 587, 360 N.E.2d 1225, 1227.) The former addresses "a failure of proof," that is, whether the State has proved beyond a reasonable doubt that the defendant committed the offense in the county where he was tried (*People v. McClain* (1978), 60 Ill. App. 3d 320, 322-23, 376 N.E.2d 774, 776; *McClellan*, 46 Ill. App. 3d at 587, 360 N.E.2d at 1227), while the latter guarantees that the trial takes place in the county where the indictment alleges that the offense was committed. *McClellan*, 46 Ill. App. 3d at 587, 360 N.E.2d at 1227; *Watt v. People* (1888), 126 Ill. 9, 18, 18 N.E. 340, 343-44.

Although the substantive aspect of venue is a necessary element of an offense, it may be proved circumstantially. (*Hagan*, 145 Ill. 2d at 300, 583 N.E.2d at 500; *Church*, 366 Ill. at 158, 7 N.E.2d at 898.) Furthermore, although section 1—6 of the Criminal Code (Ill. Rev. Stat. 1987, ch. 38, par. 1—6) (section 1—6) is captioned "Place of trial," our courts have consistently applied the provisions of this statute to determine questions regarding the substantive as well as the

procedural aspect of venue. (See, *e.g., Hagan*, 145 Ill. 2d at 300-01, 583 N.E.2d at 500 (applying section 1—6(a) (general rule) to substantive element of venue); *People v. Page* (1990), 196 Ill. App. 3d 285, 292, 553 N.E.2d 753, 758 (applying section 1—6(c) (homicide in different counties) to substantive question of venue); *People v. Ramsey* (1986), 147 Ill. App. 3d 1084, 1089, 496 N.E.2d 1054, 1058 (applying section 1—6(f) (offenses committed in transit) to substantive element of venue), *appeal denied* (1987), 113 Ill. 2d 583, 505 N.E.2d 359; *People v. Clark* (1979), 71 Ill. App. 3d 381, 397, 389 N.E.2d 911, 923 (applying section 1—6(n) (accountability) to substantive issue of venue).) Therefore, in order to sufficiently establish venue in a particular county the State must prove beyond a reasonable doubt only that which is required by section 1—6. See *Page*, 196 Ill. App. 3d at 292, 553 N.E.2d at 758 (element of venue proved beyond a reasonable doubt for felony murder conviction where section 1—6(c) was satisfied).

Like any other necessary element of an offense, the State's failure to prove venue beyond a reasonable doubt is fatal to a judgment of conviction and may be raised for the first time on appeal. (*People v. Walker* (1955), 7 Ill. 2d 158, 160, 130 N.E.2d 182, 183.) The remedy for such a failure is reversal of the defendant's conviction. *O'Gara*, 271 Ill. at 142, 110 N.E. at 829; *Clark*, 71 Ill. App. 3d at 386, 389 N.E.2d at 922.

When a defendant raises a claim of insufficient evidence, the evidence is viewed in the light most favorable to the State, and a reviewing court must determine whether any rational trier of fact could have found the defendant guilty of the crime beyond a reasonable doubt. (*People v. Young* (1989), 128 Ill. 2d 1, 49-50, 538 N.E.2d 453, 473.) The reviewing court must also determine whether the evidence was so unreasonable, improbable, or unsatisfactory as to raise a reasonable doubt of defendant's guilt. (*Young*, 128 Ill. 2d at 51, 538 N.E.2d at 474.) With these standards to guide us, our inquiry focuses upon the issue of whether the State proved beyond a reasonable doubt the element of venue in Cook County for each of the defendants' convictions.[3]

---

[3]Defendants argue that the State produced no evidence whatsoever at defendants' trials on the question of venue. That contention, however, is belied by S.S.' testimony at each trial that she was abducted at "2441 West 35th Street in Chicago, Cook County Illinois," as well as by the fact that defendants admit in their briefs that the evidence established that S.S. was kidnapped in Cook County. Furthermore, defendants do not dispute the fact

## A. ATTEMPT (MURDER)

■ As mentioned above, the general rule for establishing venue under section 1—6(a) is that the State must prove beyond a reasonable doubt that the acts which constitute the offense occurred in the county alleged in the indictment. (*Hagan*, 145 Ill. 2d at 301, 583 N.E.2d at 500.) However, section 1—6 also provides several exceptions to this general rule, including one that is set forth in subsection (m), which states: "[a] person who commits an inchoate offense may be tried in any county in which any act which is an element of the offense, including the agreement in conspiracy, is committed." Ill. Rev. Stat. 1987, ch. 38, par. 1—6(m).

■ In order to support a conviction for attempt (murder), the State must establish the following two elements: (1) that the defendant performed an act which constitutes a "substantial step" towards the commission of the crime (Ill. Rev. Stat. 1987, ch. 38, par. 8—4(a)), and (2) that he possessed the criminal intent to kill the victim. *People v. Mitchell* (1985), 105 Ill. 2d 1, 9, 473 N.E.2d 1270, 1274.

■ The evidence presented by the State in these cases demonstrates that the juries could have reasonably found that the State established beyond a reasonable doubt that defendants formulated their intent to kill in Cook County. Intent to kill is a state of mind which, if not admitted, can be established by proof of surrounding circumstances, including the character of the assault, the use of a deadly weapon or other matters from which such an intent may be inferred. *People v. Mitchell* (1991), 209 Ill. App. 3d 562, 569, 568 N.E.2d 292, 297.

First, the evidence illustrates that Carroll told S.S. that *they* were going to kill her *before* they raped her. It was entirely reasonable for each jury to conclude from this statement that each defendant intended to kill S.S. from the very beginning of the criminal activity in Cook County.[4]

Second, the record establishes that both Carroll and Brian stated

---

that the State introduced testimony which established that the field where S.S. was beaten and sexually assaulted was in Will County.

[4] The comments made by Judge Disko at the various sentencing hearings do not change this conclusion. Her statements to the effect that defendants did not decide to kill S.S. until they had finished sexually assaulting her are contrary to the evidence that Carroll told S.S. that they were going to kill her *before* they raped her. More important, Judge Disko's remarks came after defendants had been conclusively found guilty by the various juries, the sole fact finders in these cases. Judge Disko's role at *sentencing* cannot in any sense be construed as that of a fact finder at the *guilt-innocence* phase of the trial.

that they were going to kill S.S. because they did not want to become involved with the police. Although it is clear that both Brian and Carroll first *expressed* their intent to kill in Will County, it is abundantly clear that they *possessed* such an intent while in Cook County; indeed, both men explicitly stated that they intended to kill S.S. in order to eliminate any possibility of her identifying them as the perpetrators of the crimes against her, a possibility that clearly existed from the moment of her kidnapping. From the very beginning of their participation in her abduction, Carroll and Brian were irreparably involved in a serious crime for which they could be severely punished if they were ever linked to the offense. Under the circumstances of this case, their intent to kill her certainly cannot be considered an afterthought any more than the sexual assault or kidnapping can be considered afterthoughts. Brian and Carroll merely carried out in Will County what they had intended to do from the time they initiated their criminal activity in Cook County. Moreover, when one considers the distance that exists between 35th and Western in Chicago to the Will County line, it would be absurd to assume that Carroll and Brian suspended their intent to kill until after they had crossed the county line and had sexually assaulted her; the facts in this case simply do not admit of such a deferred objective. The juries in these cases were not required to presume that when S.S. was abducted in Chicago and forced into a car at gunpoint by a group of thugs, their intent was only to take her on a joyride or to escort her to a prayer meeting. Consequently, it was incontestably reasonable for the juries to infer, based on the evidence presented to them, that Carroll and Brian had formulated their intent to sexually assault and kill S.S. while in Cook County, based on their statements made in Will County at the times indicated.

■ We further conclude that venue for the crime of attempt (murder) was also properly fixed in Cook County for all four defendants on the theory of accountability, pursuant to section 1—6(n), which provides:

> "Where a person in one county solicits, aids, abets, agrees, or attempts to aid another in the planning or commission of the offense in another county, he may be tried for the offense in either county." (Ill. Rev. Stat. 1987, ch. 38, par. 1—6(n).)

Section 1—6(n) accordingly commands that where the State proves that a defendant aids and abets in one county the commission of a crime in another county, the State has sufficiently proved the element of venue in either county. (*Clark,* 71 Ill. App. 3d at 397, 389 N.E.2d at 923-24.) In the case at bar, the facts establish that each defendant was aiding and abetting the others in the commission of the crime (attempt (murder)) in Cook County (see *People v. Cobb* (1983),

97 Ill. 2d 465, 476, 455 N.E.2d 31, 35 ("[A]n accomplice is one who could himself have been indicted for the offense either as a principal or as an accessory"); accord *People v. Johnson* (1991), 215 Ill. App. 3d 713, 726, 575 N.E.2d 1247, 1257); and since the offense was finally accomplished in Will County, venue was established in both Cook and Will Counties.[5] Accordingly, under section 1—6(n), the State has sufficiently proved venue in Cook County.

## B. AGGRAVATED CRIMINAL SEXUAL ASSAULT

■ We find that the accountability exception set forth in section 1—6(n) applies also to defendants' convictions for aggravated criminal sexual assault for the same reasons we have discussed in connection with the attempt (murder) charge. It was eminently reasonable for the juries to conclude from the evidence that each defendant, while in Cook County, aided and abetted the others in the commission of the aggravated criminal sexual assault which occurred in Will County. As mentioned above, where one aids and abets in one county the commission of an offense in another county, venue is properly established in either. Consequently, we hold that the State sufficiently proved beyond a reasonable doubt venue in Cook County for the offense of aggravated criminal sexual assault.

## C. AGGRAVATED BATTERY

The provision of section 1—6 relevant to the offense of aggravated battery states:

> "If an offense is committed upon any *** vehicle *** passing within this State, and it cannot readily be determined in which county the offense was committed, the offender may be tried in any county through which such *** vehicle *** has passed." (Ill. Rev. Stat. 1987, ch. 38, par. 1—6(f).)

Thus, to support a conviction for aggravated battery in this instance, the State must establish, for purposes of venue, that "it [could not] be readily determined" in which county the bodily harm was inflicted on S.S. See *Ramsey*, 147 Ill. App. 3d at 1089, 496 N.E.2d at 1058; *People v. Frank* (1981), 98 Ill. App. 3d 388, 395, 424 N.E.2d 799, 804.

A person commits battery if "he intentionally or knowingly without legal justification and by any means, (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with the individual." (Ill. Rev. Stat. 1987, ch. 38, par. 12—3.) A battery is "aggravated" when the offender "intention-

---

[5]The State argued to the jury in all four trials that each defendant was responsible for the acts of the others under accountability principles. Furthermore, each jury was instructed on the law of accountability.

ally or knowingly causes great bodily harm." Ill. Rev. Stat. 1987, ch. 38, par. 12—4.

■ It is beyond dispute that defendants inflicted great bodily harm upon S.S. When taken to the hospital, she was treated for a fractured skull, a concussion, a broken jaw which needed to be wired shut, and a bleeding spleen, and a torn labia. She remained in the hospital for two weeks. The evidence also clearly illustrates that on the way to Will County, S.S. was repeatedly struck by defendants. It is unclear, however, whether these blows caused great bodily harm while the car was still in Cook County, or whether the assailants did not inflict such harm until they reached the Will County line. There is evidence, however, that defendants used violence to get her into the car and that they beat her repeatedly after they had forced her inside. Viewing the evidence in a light most favorable to the State, as we must (*Young*, 128 Ill. at 49-50, 538 N.E.2d at 473), we find it reasonable for the jury to have concluded that the repeated blows of the assailants while in the car caused S.S. great bodily harm. Furthermore, under section 1—6(f), the State need only prove that the evidence was such that it could not be readily determined if the bodily harm was inflicted in Cook or Will County. Accordingly, we hold that the State sufficiently established venue in Cook County for the offense of aggravated battery.

## D. AGGRAVATED KIDNAPPING

That portion of section 1—6 relevant to the aggravated kidnapping offense states: "A person who commits the offense of kidnaping may be tried in any county in which his victim has traveled or has been confined during the course of the offense" (Ill. Rev. Stat. 1987, ch. 38, par. 1—6(i)); and kidnapping occurs when a person "knowingly *** [a]nd secretly confines another against his will" (Ill. Rev. Stat. 1987, ch. 38, par. 10—1). A kidnapping is "aggravated" when the kidnapper "[i]nflicts great bodily harm or commits another felony upon his victim." Ill. Rev. Stat. 1987, ch. 38, par. 10—2(a)(3).

■ The defendants concede that the kidnapping took place in Cook County; however, they contend that the aggravation did not occur in Cook County because the defendants did not inflict bodily harm on S.S. until she was in Will County. Defendants' arguments are unavailing. As discussed above, it was indisputably reasonable for the jury to conclude that the beating inflicted upon S.S. in the car caused great bodily harm while she was still in Cook County. Therefore, we find that the State sufficiently established venue for the offense of aggravated kidnapping.

In sum, the State has sufficiently charged and proved venue in

Cook County for the offenses of attempt (murder), aggravated criminal sexual assault, aggravated battery, and aggravated kidnapping under section 1—6.[6]

## II

Alan, Brian and Ausmus also assign as error the trial court's refusal to transfer their cases to Will County. As mentioned above, this issue relates to the procedural aspect of venue, *i.e.*, the proper place of trial. (See *McClellan*, 46 Ill. App. 3d at 587, 360 N.E.2d at 1227.) These defendants argue that the trial court, having presided over the Carroll trial, knew that the evidence was going to establish that the offenses alleged in the indictment took place in Will County and thus should have transferred the case there. The State contends, in essence, that defendants have waived this issue.

Section 1—6(a) states:

> "Place of trial. (a) Generally. Criminal actions shall be tried in the county where the offense was committed, except as otherwise provided by law. All objections of improper place of trial *are waived* by a defendant unless made before trial." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 38, par. 1—6(a).)

Furthermore, section 114—1 of the Code of Criminal Procedure of 1963 states:

> "Motion to dismiss charge. (a) Upon the *written* motion of the defendant made prior to trial before or after a plea has been entered the court may dismiss the indictment, information or complaint upon any of the following grounds:
>
> * * *
>
> (7) The county is an improper place of trial
>
> * * *
>
> (b) The court shall require any motion to dismiss to be filed *within a reasonable time after the defendant has been arraigned.* Any motion not filed within such a time or an extension thereof shall not be considered by the court and the grounds therefor, except to subsections (a)(6) and (a)(8) of this Section, *are waived.*" (Emphasis added.) Ill. Rev. Stat. 1987, ch. 38, pars. 114—1(a), (b).

---

[6]The fact that none of the juries was given an instruction on the element of venue is irrelevant, since such an instruction is unnecessary when venue is not a controverted issue in the case. (*People v. Anderson* (1934), 355 Ill. 289, 303, 189 N.E. 338; *People v. Turner* (1989), 179 Ill. App. 3d 510, 520, 534 N.E.2d 179, 186, *appeal denied* (1989), 126 Ill. 2d 565, 541 N.E.2d 1114; *People v. Chaney* (1987), 157 Ill. App. 3d 552, 563, 510 N.E.2d 997, 1004; *McClain*, 60 Ill. App. 3d at 323, 376 N.E.2d at 777; *People v. Trejo* (1978), 40 Ill. App. 3d 503, 510, 352 N.E.2d 61, 73.) While proof of venue is clearly an issue on appeal, the record reflects that none of the defendants argued to the jury that the State had not sufficiently proved venue as an element of the offenses; thus, it was not necessary to instruct the juries on that issue.

All parties agree that defendants waited until shortly before each trial, some two years after each defendant was arraigned, to object to the place of trial, and even at that, they did so orally. However, defendants' counsel knew early in the proceedings that the victim was transported to Will County and sexually assaulted there, having learned this from defendants' confessions and the State's complaint for preliminary examination. Therefore, defendants had no reasonable excuse for their failure to make a timely, written, pretrial motion objecting to the place of trial. Accordingly we find that this argument has been waived. See *McClain*, 60 Ill. App. 3d at 323, 326 N.E.2d at 776 (objection to improper place of trial is waived if not objected to before trial).

■ Even if this issue were not waived, we find that defendants' arguments are meritless. A defendant has a constitutional right to a trial in the county in which the offense is alleged to have been committed. (Ill. Const. 1970, art. I, § 8; *McClellan*, 46 Ill. App. 3d at 587, 360 N.E.2d at 1227.) However, that right merely guarantees that the trial be held where the indictment alleges the offense was committed. (See *McClellan*, 46 Ill. App. 3d at 587, 360 N.E.2d at 1227 ("Defendant has a constitutional right to trial in the county in which the offense is alleged to have been committed. [Citation.] The indictment alleges that the offense occurred in Champaign County and trial was properly had there"); *McClain*, 60 Ill. App. 3d at 322, 396 N.E.2d at 776 ("[T]he indictment need only allege the situs of the crime with sufficient particularity to notify the defendant of the offense with which he is charged"); see also *Watt*, 126 Ill. at 18, 18 N.E. at 343-44 (Alleged means the allegation of the county, referred to in the indictment).) In the case at bar, the indictments alleged that the offenses occurred in Cook County, and the trials were had there. Accordingly, Cook County was the proper place of trial.

### III

Carroll, Alan and Brian next contend that by giving Illinois Pattern Jury Instructions, Criminal, Nos. 1.31,[7] 11.33,[8] and 11.63[9] (2d

---

[7]IPI Criminal 2d 11.31 (Supp. 1987) provides as follows:

"A person commits the offense of criminal sexual assault when he commits an act of sexual penetration upon the victim by the use of force or threat of force."

[8]IPI Criminal 2d No. 11.33 (Supp. 1987) provides as follows:

"A person commits the offense of aggravated criminal sexual assault when he commits criminal sexual assault; and cause[s] bodily harm to the victim."

ed. Supp. 1987) (hereinafter IPI Criminal 2d) to their respective juries, the trial court impermissibly lessened the State's burden to prove that a crime had occurred, because these instructions used the term "victim." They further complain that any sympathy engendered by the use of the term "victim" was prejudicial because the trial court did not give IPI Criminal 2d No. 11.66 (Supp. 1987),[10] which defines the term "victim." The State responds by asserting that since Carroll, Alan and Brian all admit that they failed to object to the instructions or to offer their own, they have waived this issue on appeal. *People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1129-30.

The three defendants admit that they "technically" waived this issue on appeal. They nevertheless argue that this court should review their contention under the "plain error" rule. (134 Ill. 2d R. 615(a).) "The criterion for the application of the plain error rule in criminal cases is whether the evidence is so closely balanced or the error is of such magnitude that the commission thereof denied the accused a fair or impartial trial or sentencing hearing." (*Young*, 128 Ill. 2d at 47, 538 N.E.2d at 471.) In the cases at bar, we do not deem the evidence to have been closely balanced; and we further find that the inclusion of the word "victim" in the jury instructions was not so prejudicial as to deny Carroll, Alan or Brian a fair trial. Accordingly, we hold that defendants have waived this issue.

In any event, the defendants' argument is groundless. Under Supreme Court Rule 451(a) (134 Ill 2d. R. 451(a)),[11] a trial court is bound to use IPI instructions unless it finds them to be an inaccurate statement of the law. (*People v. Haywood* (1980), 82 Ill. 2d 540, 545, 413 N.E.2d 410, 413; *People v. Tucker* (1990), 193 Ill. App. 3d 849, 853,

---

[9]IPI Criminal 2d No. 11.63 (Supp. 1987) provides as follows:

"The term 'Force or threat of force' means the use of force or violence, or threat of force or violence, including but not limited to when the accused threatens to use force or violence on the victim, and the victim under the circumstances reasonably believed that the accused had the ability to execute that threat when the accused has overcome the victim by use of superior strength, size, physical restraint, [or] physical confinement."

[10]IPI Criminal 2d No. 11.66 (Supp. 1987) provides as follows:

"The word 'Victim' means a person alleging to have been subjected to the offenses of [(Criminal Sexual Assault), (Aggravated Criminal Sexual Assault), (Aggravated Criminal Sexual Abuse)]."

[11]Supreme Court Rule 451(a) states in pertinent part:

550 N.E.2d 581, 584, *appeal denied* (1990), 132 Ill. 2d 553, 555 N.E.2d 364.) In determining the adequacy of instructions, the reviewing court considers all of the instructions given as a whole in order to determine if they fully and fairly cover the law. (*People v. Kolep* (1963), 29 Ill. 2d 116, 125, 193 N.E.2d 753, 758; *People v. Campos* (1992), 227 Ill. App. 3d 434, 442, 592 N.E.2d 85, 90.) The instructions at issue here cannot be said to be an inaccurate statement of the law, since they track the statutes themselves. See Ill. Rev. Stat. 1987, ch. 38, pars. 12—13, 12—14; accord *Server v. Mizell* (7th Cir. 1990), 902 F.2d 611 (rejecting identical argument).

 The three defendants' argument that it was error for the court to omit an instruction on the definition of "victim" is also without warrant. Neither Carroll, Alan, nor Brian contended at trial that S.S. was not a victim, *i.e.*, that she was not in fact beaten and sexually assaulted. Nor does that term as used in the instructions attribute guilt in any way to defendants. Therefore, the trial court cannot be held to have erred by failing to instruct the jury on the definition of the term "victim."

At any rate, even if the failure to instruct the jury as to the definition of "victim" was error, it was harmless. "A refusal to give an instruction will be held to be harmless and not a ground for reversal where it can be said that the result of the trial would not have been different if the instruction had been given." (*People v. Moore* (1983), 95 Ill. 2d 404, 410, 447 N.E.2d 1327, 1330.) When one considers how completely overwhelming the evidence was against each defendant, the conclusion is ineluctable that the outcome could not have been different.

 Carroll, Alan, and Brian also maintain that it was ineffective assistance of counsel not to object to the IPIs used or not to have tendered an instruction on the definition of "victim." Under *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, however, it is necessary to show actual prejudice or that the outcome of the trial would have been different had counsel's assis-

---

"Whenever Illinois Pattern Jury Instructions, Criminal (2d ed. 1981) (IPI Criminal 2d), contains an instruction applicable in a criminal case, giving due consideration to the facts and the governing law, and the court determines that the jury should be instructed on the subject, the IPI Criminal 2d instruction shall be used, unless the court determines that it does not accurately state the law." 134 Ill. 2d R. 451(a).

tance been effective.[12] Here, as we have already noted, the evidence was infinitely more than substantial against these three defendants; we reiterate, therefore, that the result would not have been otherwise had the instruction in question been given.

## IV

In the next issue presented for review, Carroll and Alan argue that the trial court erred by not appointing new counsel once it was informed of an alleged conflict between their counsel and themselves. After the jury had found these two defendants guilty of attempt (murder), aggravated criminal sexual assault, aggravated battery, and aggravated kidnapping, the court continued the case for post-trial motions and sentencing. In the interim, Carroll and Alan filed complaints with the Attorney Registration and Disciplinary Commission (ARDC) against their defense counsel, claiming that they had failed to adequately represent them. More specifically, Carroll complained that his attorney: (1) was prejudiced against him; (2) refused to subpoena witnesses on his behalf; and (3) proposed that he consider pleading guilty to the charges. Alan complained that his attorney failed to: (1) effectively cross-examine State witnesses; (2) dismiss a prejudiced juror; (3) call available witnesses on his behalf; and (4) allow him to testify on his own behalf.

The trial court continued the matter and ordered that another public defender investigate the alleged conflict. At the date set for post-trial motions and sentencing, the court discussed the matter briefly with both defendants in order to discover more about their complaints against their attorneys. Thereafter, the court stated that it had considered their charges very carefully and found them to be not only unfounded, but spurious as well. Consequently, the court refused to appoint new attorneys for them. It then proceeded to hear their post-trial motions, at which hearing they were represented by the same counsel who had defended them at trial.

Carroll and Alan contend that the simple filing of their complaints with the ARDC created a *per se* conflict of interest, and that, thus, the trial court should have appointed new counsel for them. In the alternative, each argues that the court should have at least made a detailed factual inquiry "to determine whether *** '[his] claim

---

[12]"[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. *** If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland v. Washington* (1984), 466 U.S. 668, 697, 80 L. Ed. 2d 674, 699, 104 S. Ct. 2052, 2069.

lacks merit or pertains to matters of trial strategy, \*\*\* [or] if the allegations show possible neglect of the case \*\*\*.' [Citation.]" *People v. Nitz* (1991), 143 Ill. 2d 82, 134, 572 N.E.2d 895, 919.

The right to effective assistance of counsel entitles the client to the undivided loyalty of his attorney (*Glasser v. United States* (1942), 315 U.S. 60, 69-70, 86 L. Ed. 680, 698-700, 62 S. Ct. 457, 464-65; *People v. Ash* (1984), 102 Ill. 2d 485, 495, 468 N.E.2d 1153, 1157), and prohibits an attorney from representing conflicting interests or undertaking inconsistent obligations. (*People v. Washington* (1984), 101 Ill. 2d 104, 110, 461 N.E.2d 393, 396.) A conviction will be reversed without a showing of actual prejudice where counsel's conflict of interest arose from or involved a commitment to others (*People v. Lewis* (1981), 88 Ill. 2d 429, 436, 430 N.E.2d 994, 998; *People v. Stoval* (1968), 40 Ill. 2d 109, 113, 239 N.E.2d 441, 443-44), but not where the conflict arose in another fashion. (*People v. Gardner* (1977), 47 Ill. App. 3d 529, 533, 362 N.E.2d 14, 19; *People v. Fuller* (1974), 21 Ill. App. 3d 437, 442, 315 N.E.2d 687, 690-91.) "A *per se* conflict of interest arises where, by its nature, the conflict subjects counsel to subtle pressures adversely affecting his representation of the accused." (*People v. Cano* (1991), 220 Ill. App. 3d 725, 730, 581 N.E.2d 236, 240.) The conflict may arise at a post-trial hearing as well. *People v. Norris* (1977), 46 Ill. App. 3d 536, 541-42, 361 N.E.2d 105, 109.

■ We find the arguments of Carroll and Alan unconvincing. Although some allegations of incompetence present a *per se* conflict of interest (see *People v. Smith* (1967), 37 Ill. 2d 622, 624, 230 N.E.2d 169, 170; *Norris*, 46 Ill. App. 3d at 541, 361 N.E.2d at 109), "[others present] merely spurious claims evolving from petty disputes between counsel and client." *People v. Ferguson* (1981), 99 Ill. App. 3d 779, 785, 425 N.E.2d 582, 585-86.

In *People v. Gustafson* (1979), 75 Ill. App. 3d 497, 393 N.E.2d 1315, the defendant theorized that a *per se* conflict existed once he had made the trial court aware in his presentence report that he was dissatisfied with his court-appointed attorney. He had accused his attorney of not calling witnesses on his behalf, but did not specify what their testimony would have been or in what way they would have aided his attorney in preparing his defense. Noting that the defendant's complaint came at the sentencing hearing, and that his allegations of failure to call witnesses merely addressed trial strategy, the court held that a *per se* conflict of interest did not exist. The court relied on the policy considerations expressed in *People v. Gardner* (1977), 47 Ill. App. 3d 529, 362 N.E.2d 14:

"Should the courts develop a rule requiring reversal upon a showing of personal conflict and animosity arising from an

incident between a defendant and his counsel which results in a complaint being filed with the appropriate authorities? The rule would become a spawning ground for frivolous appeals and supply a reason for defendants not to fully cooperate with court-appointed counsel. Whether a difference of opinion regarding possible trial tactics or defenses might arise between a defendant and his attorney, such a rule would promote noncooperation and disputes over the smallest differences of opinion. Furthermore, such a rule would instigate the filing of groundless complaints with the Attorney Registration and Disciplinary Commission whenever a defendant became dissatisfied with the performance. of his attorney in order to assure a reliable mode of reversal should conviction result from the trial." *Gustafson*, 75 Ill. App. 3d at 502, 393 N.E.2d at 1318.

In *People v. Johnson* (1981), 98 Ill. App. 3d 228, 424 N.E.2d 610, the defendant filed a "petition for a fair trial," alleging that his court-appointed attorney was ineffective because he had spent less than 30 minutes talking with him to prepare his defense, and that he had discouraged one of his witnesses from testifying on his behalf. In addressing the defendant's conflict of interest claim, the court could not identify any

"reason for granting relief to a defendant complaining of a conflict of interest based upon incompetence of counsel where the alleged incompetence constituted nothing more than a disagreement between counsel and the defendant on the choice of trial tactics. Moreover, by refusing to recognize a conflict of interest in such situations, we will reduce the petty disputes concerning the smallest differences of opinion and promote cooperation between counsel and client without endangering the defendant's rights to competent and effective assistance of counsel. [Citing *Gardner*, 47 Ill. App. 3d 529, 362 N.E.2d 14.] \*\*\* Thus, we hold that where specific allegations of incompetence consist of disputes over trial tactics and are presented during trial, no conflict of interest arises. [Citing *Gustafson*, 75 Ill. App. 3d 497, 393 N.E.2d 1315.]" *Johnson*, 98 Ill. App. 3d at 231-32, 424 N.E.2d at 614.

On the facts of this case, we conclude that a *per se* conflict did not exist. The complaints Carroll and Alan level against their counsel are based on trial strategy and are indistinguishable from *Gustafson*, where the defendant had also accused his attorney of not calling witnesses on his behalf, but failed to specify the contents of their testimony or how it would have aided his attorney in preparing his defense. Additionally, the trial court carefully examined the contents of Carroll's and Alan's complaints and found them to be spurious. Consequently, we hold that the trial court did not err in refusing to

conduct a protracted hearing to determine the merits of these two defendants' complaints against their defense counsel.

## V

The next issue presented for review is whether the police had probable cause to arrest Carroll and Ausmus. Both defendants argue that the source of the officer's information, Ausmus' stepmother, Debbie, was not a reliable one and that none of the facts which the police gathered subsequent to their interviewing her corroborated her story. Ausmus places particular importance on the fact that S.S. did not identify him when shown an array of photographs prior to his arrest.

The police may not seize a suspect without probable cause. (*Dunaway v. New York* (1979), 442 U.S. 200, 60 L. Ed. 2d 824, 99 S. Ct. 2248.) Probable cause exists when the "totality of circumstances" known to the officers is such that a reasonably prudent person would believe that the suspect is committing or has committed a crime. (*Illinois v. Gates* (1983), 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317; *People v. Montgomery* (1986), 112 Ill. 2d 517, 525, 494 N.E.2d 475, 477; *People v. Tisler* (1984), 103 Ill. 2d 226, 236, 469 N.E.2d 147, 152.) Further, the information upon which the police rely to make an arrest must bear "some indicia of reliability." (*People v. James* (1987), 118 Ill. 2d 214, 223, 514 N.E.2d 998, 1002.) But determination of probable cause is not governed by technical legal rules but by commonsense considerations which are factual and practical. (*Tisler*, 103 Ill. 2d at 236, 469 N.E.2d at 153.) Indeed, it is the probability of criminal activity, and not proof beyond a reasonable doubt, that is the standard for assessing probable cause. *People v. Exline* (1983), 98 Ill. 2d 150, 154, 456 N.E.2d 112, 114.

Moreover, the usual requirement of prior reliability which must be met when police act upon "tips" from professional informers does not apply to information supplied by ordinary citizens (*People v. Hester* (1968), 39 Ill. 2d 489, 514, 237 N.E.2d 466, 481; *People v. Hoffman* (1970), 45 Ill. 2d 221, 226, 258 N.E.2d 326; *People v. Johnson* (1989), 187 Ill. App. 3d 756, 771, 544 N.E.2d 392, 401; *People v. Jones* (1983), 119 Ill. App. 3d 615, 623, 456 N.E.2d 926, 933), that is, from informants who have never given information to the police in the past. (*Jones*, 119 Ill. App. 3d at 623, 456 N.E.2d at 933.) Accordingly, police may properly rely on information from a private citizen to formulate probable cause to arrest without verifying that citizen's reliability. (*People v. McCleary* (1990), 208 Ill. App. 3d 466, 478, 567 N.E.2d 434, 441.) In fact, police may also rely on hearsay information to establish grounds for probable cause. *Hester*, 39 Ill. 2d at 514, 237

N.E.2d at 480; *Johnson*, 187 Ill. App. 3d at 771, 544 N.E.2d at 401; *People v. Garcia* (1981), 94 Ill. App. 3d 940, 945, 419 N.E.2d 542, 546.

When a police officer arrests a suspect without a warrant, the trial court must, in making the probable cause determination, apply standards at least as stringent as those that guide a magistrate in deciding whether to issue an arrest warrant. (*Tisler*, 103 Ill. 2d at 236, 469 N.E.2d at 153); and a trial court's finding of probable cause will not be disturbed on review unless it is manifestly erroneous. *People v. Redd* (1990), 135 Ill. 2d 252, 268, 553 N.E.2d 316, 322.

■ After examining the "totality of the circumstances" prior to the arrest of Carroll and Ausmus, we conclude that the trial court's holding that the police had probable cause to arrest them was not manifestly erroneous. Detective Smith met with the informant, Debbie, on May 1, 1987, and she provided him with the following detailed information: (1) that Ausmus, Alan Papendik, Brian Papendik, and another man named Lester had abducted a girl from the corner of 35th and Western in mid-April; (2) that Lester drove them to a field near Joliet in his sister's car; (3) that Lester's sister was named Kim; (4) that the men beat and perhaps killed the girl; (5) that Alan Papendik was living with a woman and a child; and (6) the address of the apartment in which they resided. All of this information was substantiated by Smith's subsequent investigation. Particularly compelling is that Carroll's sister's car, a dark blue 1974 Oldsmobile, matched the description of "an older dark blue beater" contained in the Will County police reports of the crime. Accordingly, taking into consideration the totality of the circumstances, it is clear that a reasonable person could have believed that Carroll and Ausmus were involved in the criminal activity that forms the subject matter of this case.

The fact that Debbie's information regarding Ausmus' involvement in the crimes was not subsequently corroborated does not change our conclusion. It is true that the facts available to the police must establish more than the fact that criminal activity occurred; there must be facts which give the police probable cause to believe that the arrestee was involved in that criminality. (*Ybarra v. Illinois* (1979), 444 U.S. 85, 91, 62 L. Ed. 2d 238, 245, 100 S. Ct. 338, 342; *People v. Booker* (1991), 209 Ill. App. 3d 384, 393, 568 N.E.2d 211, 218.) The police, however, did possess such information here. Debbie specifically implicated Ausmus, her stepson, in the crimes at issue here. Because Debbie was an ordinary citizen, the police did not have to substantiate that information to render it sufficiently reliable to establish probable cause that Ausmus was involved in those offenses. (*Hester*, 39 Ill. 2d at 514, 237 N.E.2d at 481.) In any event, the police

did obtain subsequent corroboration for practically all of the information contained in Debbie's tip. Thus, that information, including those facts that were not specifically corroborated, was sufficiently reliable to establish probable cause to arrest Carroll and Ausmus.

## VI

Alan, Brian and Ausmus next assert that the trial court denied them their rights to a fair and impartial jury because the court refused to excuse for cause certain potential jurors who expressed some doubt as to whether or not they would be prejudiced against them. The State responds by arguing that the court asked follow-up questions after the prospective jurors at issue were equivocal in answering some questions regarding prejudice, and these questions brought forth responses that demonstrated that the jurors would follow the law and be fair and impartial.

It is axiomatic that a defendant has a constitutional right to a fair and impartial jury. (*People v. Johnson* (1991), 215 Ill. App. 3d 713, 723, 575 N.E.2d 1247, 1253.) One important purpose of *voir dire* is to filter out prospective jurors who are unable or unwilling to be impartial. (*People v. Washington* (1982), 104 Ill. App. 3d 386, 390, 432 N.E.2d 1020, 1023-24.) Our supreme court has identified the essential qualifications of jurors with regard to partiality. An impartial juror must demonstrate an understanding that: (1) the defendant is presumed innocent; (2) the defendant is not required to offer any evidence in his own behalf; (3) the defendant must be proven guilty beyond a reasonable doubt; and (4) the defendant's failure to testify cannot be held against him. *People v. Zehr* (1984), 103 Ill. 2d 472, 477, 469 N.E.2d 1062, 1064.

A prospective juror may not be excused unless his or her views prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath. (*Wainwright v. Witt* (1985), 469 U.S. 412, 424, 83 L. Ed. 2d 841, 851-52, 105 S. Ct. 844, 852; *People v. Pitsonbarger* (1990), 142 Ill. 2d 353, 385, 568 N.E.2d 783, 796.) Furthermore, "a potential juror's remarks must not be considered in isolation but as a whole." *Pitsonbarger*, 142 Ill. 2d at 386, 568 N.E.2d at 796.

The determination of whether or not a potential juror is impartial is within the sound discretion of the trial court and will not be set aside unless its determination is contrary to the manifest weight of the evidence. (*People v. Cole* (1973), 54 Ill. 2d 401, 413-14, 298 N.E.2d 705, 712; *People v. Nicholson* (1991), 218 Ill. App. 3d 273, 285, 577 N.E.2d 1313, 1321.) Our supreme court has consistently emphasized that the trial court's determination concerning potential prejudice is

entitled to deference because of the "superior position of the trial judge to gauge the meaning of the prospective juror's responses to the questions that were asked." (*Pitsonbarger*, 142 Ill. 2d at 388, 568 N.E.2d at 797; *People v. Emerson* (1987), 122 Ill. 2d 411, 439, 522 N.E.2d 1109, 1120, *People v. Davis* (1983), 95 Ill. 2d 1, 19-20, 447 N.E.2d 353, 362.) The supreme court has held also that the trial court need not require a juror to express himself or herself with "meticulous preciseness" and that a court need not follow a "set catechism" in proposing questions to a potential juror. *Pitsonbarger*, 142 Ill. 2d at 385, 568 N.E.2d at 797.

█ We find here that the trial court did not abuse its discretion in refusing to excuse for cause the potential jurors in question. Undoubtedly, each of the potential jurors complained of by defendants initially expressed some doubt as to his or her ability to be impartial. This fact alone, however, does not require the trial court to dismiss a potential juror for cause. See *Pitsonbarger*, 142 Ill. 2d at 386, 568 N.E.2d at 797 ("The fact that a potential juror prefaces an answer with 'probably' or the like does not render his answer ambiguous"); *Davis*, 95 Ill. 2d at 20, 447 N.E.2d at 362 ("Although initially equivocal and hesitant, [potential juror's] final response indicated that he could view defendant's trial as a 'separate case' "); *People v. Szabo* (1983), 94 Ill. 2d 327, 354, 447 N.E.2d 193, 206-07 (prospective juror should not have been excluded because of equivocal and tentative statements); *People v. Tipton* (1991), 222 Ill. App. 3d 657, 665, 584 N.E.2d 310, 315 (response of potential juror that she "might" have some difficulty being impartial did not require dismissal for cause where she stated that she would do her best), *appeal denied* (1992), 144 Ill. 2d 641, 591 N.E.2d 29; *Nicholson*, 218 Ill. App. 3d at 286, 577 N.E.2d at 1322 (juror who stated that "I will try, yes" to assess the trial evidence did not demonstrate inability to be impartial).

This is especially true where, as here, the court questions the potential juror further to determine if he understands and can apply the basic requirements of jurors in a criminal case, *i.e.*, the requirement of proof beyond a reasonable doubt, the presumption of innocence, and the principle that defendants' failure to testify could not be held against them. The trial court, based on the venirepersons' satisfactory responses to these questions, determined that despite some initial indicia of prejudice, the venire members could consider the evidence fairly and be impartial jurors. In light of the fact that the trial court is to be granted substantial deference in its decision as to whether or not to remove potential jurors for cause, we conclude that the trial court's decisions were not against the manifest weight of the evidence.

## VII

In the next assignment of error, Alan and Brian assert that they were denied their due process rights to a fair trial because the trial court allowed "mug shots" of them to go to the jury during their deliberations. The State asserts that the defendants waived this issue by: (1) not including the mug shot in the record for appeal (see *People v. Smith* (1985), 106 Ill. 2d 327, 334-35, 478 N.E.2d 357, 361); and (2) not objecting to the introduction of the mug shot at trial. (See *Enoch*, 122 Ill. 2d at 186, 522 N.E.2d at 1129-30.) We agree.

 Because Alan and Brian failed to object to the introduction of the mug shots at trial, they have waived this issue on appeal. (*Enoch*, 122 Ill. 2d at 186, 522 N.E.2d at 1129-30.) In any event, our supreme court dealt with this very issue in *People v. Warmack* (1980), 83 Ill. 2d 112, 128-29, 413 N.E.2d 1254, 1262, where it stated:

"[D]efendant has argued that the trial judge erred in admitting defendant's mug shot bearing an arrest date prior to that of the offenses now in question. The error in revealing a prior arrest is obvious, and we agree with defendant on this point. Evidence of the prior arrest was not relevant to any material issue, and it should not have been made available to the jury. *** In reviewing what we believe to be the abundant evidence of guilt, however, we have concluded that the error is harmless. We have considered the totality of the evidence presented and can safely conclude that a trial without this error would produce no different result. In this regard, we especially note that defendant's allegation of prejudice is somewhat speculative. To hold that this error is reversible would require us to presume that the jury recognized the arrest date for what it was, realized that the arrest date preceded the date of the offenses with which the defendant was charged, and then adjudicated defendant's guilt on the basis of this prior arrest rather than the evidence produced at trial. We do not believe that justice requires that this course be taken."

Accord *People v. Arman* (1989), 131 Ill. 2d 115, 123-24, 545 N.E.2d 658, 662; *People v. Lewis* (1984), 103 Ill. 2d 111, 118, 468 N.E.2d 1222, 1226.

In the cases at bar, any error committed by the trial court in allowing the juries to view the mug shots during the trials of Alan and Brian was harmless, for the evidence against them was massive. At the very least, the prejudice, if any, to these two defendants, as the supreme court found as to the defendant in *Warmack*, was minimal and extremely speculative. Accordingly, the trial court's error, if any, in admitting the mug shots was harmless beyond a reasonable doubt.

## VIII

In the next assignment of error, Alan asserts that he was denied his due process right to a fair trial by the prosecutor's rebuttal argument. More specifically, Alan argues that the argument was improper because: (1) it attempted to place the burden of proof on him by calling attention to the fact that he did not call any witnesses on his behalf; (2) it compared his defense to "horse manure"; and (3) it argued inferences beyond the scope of the evidence.

To begin with, we note that a prosecutor is given wide latitude during closing argument. (*People v. Johnson* (1992), 149 Ill. 2d 118, 145, 594 N.E.2d 253, 266-67; *People v. Manley* (1991), 222 Ill. App. 3d 896, 907, 584 N.E.2d 477, 486; *People v. Brown* (1991), 222 Ill. App. 3d 703, 718, 584 N.E.2d 355, 365, *appeal denied* (1992), 144 Ill. 2d 636, 591 N.E.2d 25.) It is also well settled that "[b]ecause the trial court is in the best position to determine the prejudicial effect, if any, of a remark made during argument, the character and scope of argument to the jury is left largely to the trial court, and every reasonable presumption must be indulged in that the trial court has performed its duty and properly exercised the discretion vested in [it]." (*Manley*, 222 Ill. App. 3d at 907, 584 N.E.2d at 486, citing *People v. Smothers* (1973), 55 Ill. 2d 172, 176, 302 N.E.2d 324, 327.) Moreover, although prosecutorial misconduct may be a ground for reversal, prosecutorial remarks usually do not warrant reversal unless they are so prejudicial as to constitute such a material factor in defendant's conviction that the jury would have likely reached a contrary verdict had the remarks not been made. (*People v. Malone* (1991), 211 Ill. App. 3d 628, 636, 570 N.E.2d 584, 590, *appeal denied* (1991), 142 Ill. 2d 660, 584 N.E.2d 135.) Finally, each case must be decided on its own facts. (*People v. Baptist* (1979), 76 Ill. 2d 19, 29, 389 N.E.2d 1200, 1205; *Malone*, 211 Ill. App. 3d at 636, 570 N.E.2d at 590; *People v. Townsend* (1985), 136 Ill. App. 3d 385, 394, 483 N.E.2d 340, 347, *appeal denied* (1985), 111 Ill. 2d 563, 485 N.E.2d 1092.) With these standards in mind, Alan's contentions will be addressed *seriatim*.[13]

### A

Alan first contends that the State's rebuttal argument impermissibly shifted the burden of proof to him by pointing to his failure to call certain witnesses. The State contends that the prosecutor's comments were invited by defense counsel's assertions that the State

---

[13]The State argues that Alan has waived this issue for purposes of appeal. This contention is unavailing, however, since Alan both objected to the State's rebuttal argument and included it in his post-trial motion. *Young*, 128 Ill. 2d at 47, 538 N.E.2d at 471.

was covering up evidence, hiding potential witnesses, and coercing Alan's confession.

Ordinarily, the State may not comment on a defendant's failure to call witnesses on his behalf. (*People v. Holman* (1988), 103 Ill. 2d 133, 151, 469 N.E.2d 119, 128; *People v. Weinstein* (1966), 35 Ill. 2d 467, 470, 220 N.E.2d 432, 433-34.) However, it is well established that such comments are permitted when they are made solely in response to defense counsel's own reference to the State's failure to call those witnesses. *People v. Richardson* (1988), 123 Ill. 2d 322, 354, 528 N.E.2d 612, 625; *People v. Wheeler* (1991), 216 Ill. App. 3d 609, 624, 575 N.E.2d 1326, 1338, *appeal granted* (1991), 142 Ill. 2d 664, 584 N.E.2d 138.

In this instance, the record clearly reveals that when the prosecutor referred to Alan's failure to call certain witnesses, he was responding to defense counsel's accusation that the State had failed to call such witnesses and had attempted to hide such evidence. We cannot say that the trial court abused its wide discretion in allowing such prosecutorial argument, especially where the court instructed the jury that the defendant was not required to prove his innocence. (See *Manley*, 222 Ill. App. 3d at 912, 584 N.E.2d at 489-90.) Furthermore, even if the court did err in allowing the prosecutor's comments, it did not amount to reversible error since there was no likelihood that the jury would have reached a contrary verdict had the remarks not been made. *Malone*, 211 Ill. App. 3d at 636, 570 N.E.2d at 590.

B

Alan also argues that the prosecutor's comment that defense counsel's argument was "horse manure" was so prejudicial as to require reversal. This identical argument was rejected in *People v. Moore* (1988), 172 Ill. App. 3d 325, 335, 526 N.E.2d 591, 598, where the court stated:

"Defendant also complains of the prosecutor's comment in rebuttal that defense counsel had spread a lot of 'horse manure' around the courtroom. This pungent remark appears to be a variation on the more familiar 'smoke screen' argument which has often been held to be improper but has seldom been found to be prejudicial. [Citations.] We believe that the comment was improper but do not believe that it could have prejudiced defendant."

In this case, as in *Moore*, we find that Alan was not prejudiced by the prosecutor's comment.

C

Finally, Alan asserts that the prosecutor argued facts that were not in evidence. Specifically, he asserts that the prosecutor misstated

the evidence when he argued to the jury that: (1) no rectal examination of S.S. was performed; and (2) the assistant State's Attorney who took the defendant's confession was on maternity leave.

Prosecutorial arguments that are based upon facts in evidence, or upon reasonable inferences therefrom, are within the scope of proper argument. (*People v. Albanese* (1984), 104 Ill. 2d 504, 520, 473 N.E.2d 1246, 1252; *People v. Terry* (1984), 99 Ill. 2d 508, 516, 460 N.E.2d 746, 750.) Also, comments by a prosecutor that were invited by defense counsel's closing argument are proper. *People v. Johnson* (1986), 114 Ill. 2d 170, 201, 499 N.E.2d 1355, 1369.

We find that the prosecutor's comment about an anal examination of S.S. was proper since there was ample testimony regarding her medical treatment. Furthermore, the prosecutor's comment concerning the assistant State's Attorney being on maternity leave was in response to defense counsel's accusation that the State was hiding witnesses and was thus proper. To the extent that the trial court erred in allowing these comments, reversal is not required because the jury's verdict would not have changed in their absence.

In sum, the trial court did not abuse its discretion in overruling defense counsel's objections to the prosecutor's rebuttal argument. Moreover, to the extent that any error was committed, either individually or cumulatively, we conclude that the jury would not have reached a contrary verdict had the comments not been made; thus, reversal is not required. See *Albanese*, 104 Ill. 2d at 524, 473 N.E.2d at 1254.

IX

In the next assignment of error, Ausmus asserts that he is entitled to a reversal, or at least a new trial, because the trial court failed to conduct a hearing on his motion to suppress the victim's lineup identification. The State concedes that no hearing was held;[14] however, it argues that Ausmus is not entitled to reversal or a new trial since no prejudice existed in view of S.S.' independent basis for her in-court identification of Ausmus.

It is undisputed that a defendant has a right to a fair and impartial hearing to determine whether his identification by a victim was based solely on the victim's observation of defendant's participation in the crime or whether it was improperly influenced by actions of investigative officers or other extraneous factors that may have unduly affected his or her judgment and conclusion. (*People v. Dennis* (1970), 47 Ill. 2d 120, 126, 265 N.E.2d 385, 389-90; *People v. Robinson*

---

[14]It appears that Judge Disko erroneously thought that such a motion had been previously entertained by Judge (now Justice) DiVito.

(1970), 46 Ill. 2d 229, 231-32, 263 N.E.2d 57, 58; *People v. Seets* (1976), 37 Ill. App. 3d 369, 370, 346 N.E.2d 61, 63.) It is equally true, however, that even where pretrial lineup procedures are defective, the defendant's conviction will not be disturbed where the record indicates that the victim had an independent basis, such as observation during the commission of the crime, for his or her in-court identification of the defendant. (*People v. Black* (1972), 52 Ill. 2d 544, 550, 288 N.E.2d 376, 381; *People v. Harris* (1991), 220 Ill. App. 3d 848, 861, 580 N.E.2d 1342, 1350, *appeal denied* (1991), 143 Ill. 2d 643, 587 N.E.2d 1019; *Seets*, 37 Ill. App. 3d at 371, 346 N.E.2d at 63; *People v. Nudo* (1971), 131 Ill. App. 2d 930, 934, 268 N.E.2d 894, 899.) This "independent basis" rule applies even where a pretrial hearing on a motion to suppress has been improperly denied. *Seets*, 37 Ill. App. 3d at 371, 346 N.E.2d at 63; *Nudo*, 131 Ill. App. 2d at 935-36, 268 N.E.2d at 899.

■ In this instance, the evidence establishes that S.S. not only observed Ausmus during the attack, but also that when she was in the car on the way to Joliet, she turned around and looked at him in the back seat several times. Based on this evidence, we conclude that reversal is not required given the victim's independent basis for her in-court identification of him.

## X

In the next issue raised on appeal, Brian asserts that the trial court punished him for exercising his right to a jury trial. More specifically, he claims that although the court initially offered to impose concurrent sentences of 15 years, and later 18 years (concurrently), on the attempt (murder) and aggravated criminal sexual assault charges, it nevertheless sentenced him to consecutive sentences of 20 years on those two charges after he refused to plead guilty and was convicted by the jury. Brian thus surmises that the court punished him for his decision to go to trial rather than to plead guilty.

■ It is well settled that a defendant cannot be punished by the imposition of a heavier sentence merely because he exercises his constitutional right to be tried before an impartial judge or jury. (*People v. Moriarty* (1962), 25 Ill. 2d 565, 567, 185 N.E.2d 688, 689; accord *People v. Sivels* (1975), 60 Ill. 2d 102, 104, 324 N.E.2d 422, 423; *People v. Greene* (1981), 102 Ill. App. 3d 933, 937, 430 N.E.2d 23, 27.) It is equally well established, however, that the mere fact that the defendant was given a greater sentence than that offered during plea bargaining does not, in and of itself, support an inference that the greater sentence was imposed as a punishment for demanding trial.

(*People v. Perry* (1971), 47 Ill. 2d 402, 408, 266 N.E.2d 330, 333; *Greene*, 102 Ill. App. 3d at 937, 430 N.E.2d at 28; *People v. Jackson* (1980), 89 Ill. App. 3d 461, 481, 411 N.E.2d 893, 908; *People v. Franklin* (1979), 80 Ill. App. 3d 128, 133, 398 N.E.2d 1071, 1075; *People v. Carroll* (1977), 49 Ill. App. 3d 387, 396, 364 N.E.2d 408, 416; *People v. Dennis* (1975), 28 Ill. App. 3d 74, 78, 328 N.E.2d 135, 138.) As the court explained in *People v. Foster* (1980), 80 Ill. App. 3d 990, 400 N.E.2d 462:

> "While confronting a defendant with the risk of more severe punishment clearly may have a 'discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable'—and permissible—'attribute of any legitimate system which tolerates and encourages the negotiation of pleas.'" *Foster*, 80 Ill. App. 3d at 996, 400 N.E.2d at 467, quoting *Corbitt v. New Jersey*, 439 U.S. 212, 220, 58 L. Ed. 2d 466, 475, 99 S. Ct. 492, 498.

There must be, therefore, a clear showing in the record that the court imposed the greater sentence as a punishment for demanding a trial. (*Perry*, 47 Ill. 2d at 408, 324 N.E.2d at 423; *Greene*, 102 Ill. App. 3d at 937, 430 N.E.2d at 28; *Carroll*, 49 Ill. App. 3d at 398, 364 N.E.2d at 16.) Such instances have occurred where the court has stated explicitly that it was imposing a more severe sentence because the defendant exercised his right to trial (see *Moriarty*, 25 Ill. 2d at 567, 185 N.E.2d at 688; *People v. Young* (1974), 20 Ill. App. 3d 891, 893, 314 N.E.2d 280, 281), or where the defendant's sentence after trial was outrageously higher than the one offered during plea negotiations. See *Dennis*, 28 Ill. App. 3d at 78, 328 N.E.2d at 128 (sentence imposed was 20 times greater than the minimum offered before trial).

In this case, defendant offers not the slightest evidence that the trial court imposed the 40-year sentence as a punishment for Brian's exercise of his right to a jury trial. Instead, the court based its sentence on the especially heinous nature of the crimes for which Brian was convicted. Moreover, the sentence imposed was only 2$^1$/$_2$ times that which was offered to him at the pretrial conference; clearly, this does not approach the excessive nature of the sentence deemed an improper punishment in *Dennis*. For these reasons, we reject Brian's contention that he was punished for demanding a jury trial.

## XI

In the final assignment of error, each defendant asserts that the trial court abused its discretion in imposing consecutive sentences for their attempt (murder) and aggravated criminal sexual assault convictions. Specifically, defendants complain that the trial court

failed to consider mitigating factors, such as potential for rehabilitation, when it sentenced Carroll, Alan and Ausmus to 75 years' imprisonment and Brian to 40 years' imprisonment.

Because the trial court is in the best position to consider matters relating to sentencing (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882, 884; *People v. Costello* (1992), 224 Ill. App. 3d 500, 510, 586 N.E.2d 742, 749), "[t]he determination of the appropriate sentence to impose in a given case is a matter within the sound discretion of the trial judge and his decision will not be overturned absent an abuse of discretion." (*People v. Wilson* (1991), 143 Ill. 2d 236, 250, 572 N.E.2d 937, 944.) Furthermore, where mitigating factors are placed before the trial court, it is presumed to have considered all of those circumstances, and the court need not recite and assign a value to each factor presented. *People v. Meeks* (1980), 81 Ill. 2d 524, 534, 411 N.E.2d 9, 14; *People v. Boclair* (1992), 225 Ill. App. 3d 331, 335, 587 N.E.2d 1221, 1224.

Section 5—8—4 of the Unified Code of Corrections specified, at the time applicable to this case, when consecutive sentences could be imposed:

"Concurrent and Consecutive terms of imprisonment. (a) *** The court shall not impose consecutive sentences for offenses which were committed as a part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless, one of the offenses for which defendant was convicted was a Class X or Class 1 felony and the defendant inflicted severe bodily injury, in which event the court may enter sentences to run consecutively. ***

(b) The court shall not impose a consecutive sentence unless, having regard to the nature and the circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, the basis for which the court shall set forth in the record." Ill. Rev. Stat. 1987, ch. 38, pars. 1005—8—4(a), (b).

Although consecutive sentences are to be imposed sparingly (*People v. O'Neal* (1988), 125 Ill. 2d 291, 298, 531 N.E.2d 366, 369), the trial court has wide discretion in deciding whether to impose a consecutive sentence, and a reviewing court should not reverse that decision unless there has been an abuse of discretion. *People v. Oaks* (1990), 195 Ill. App. 3d 513, 517, 553 N.E.2d 17, 19.

■ In this case, there is little question but that the trial court did not abuse its discretion in sentencing defendants to consecutive terms of imprisonment. First, section 5—8—4(a) is satisfied because the defendants were convicted of Class X felonies. It is also beyond

dispute that the defendants inflicted severe bodily harm on the victim, as evidenced by the victim's fractured skull, concussion, broken jaw, torn labia and lacerated spleen. Second, section 5—8—4(b) is satisfied because the trial court stated for the record that society needed to be protected from them because they "acted like terrorists," and because they had "proven themselves capable of committing very sadistic brutal acts on a sixteen year old pregnant young woman." Accordingly, we find that the trial court did not abuse its discretion in sentencing defendants to consecutive terms of imprisonment.

For the foregoing reasons, we affirm both the convictions and sentences of all four defendants.

Affirmed.

HARTMAN, P.J., and McCORMICK, J., concur.