THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
PATRICK PAGE, Defendant-Appellant.

Third District   No. 3—89—0033

Opinion filed March 29, 1990.—Rehearing denied April 27, 1990.

Verlin R. Meinz, of State Appellate Defender's Office, of Ottawa, for appellant.

Edward Burmila, State's Attorney, of Joliet (Terry A. Mertel, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE WOMBACHER delivered the opinion of the court:

Following a jury trial, the defendant, Patrick Page, was found guilty of murder, robbery, felony murder predicated on aggravated kidnapping, and aggravated kidnapping. The court sentenced the defendant to concurrent terms of imprisonment of 60 years for murder and 7 years for robbery. The defendant appeals his convictions.

The record reveals the following information. In November 1985, a hunter discovered a headless skeleton near Wilmington, Illinois. He contacted Will County law enforcement authorities, who supervised the removal of the body from the scene. The body was badly decomposed and showed evidence of charring. During an autopsy the pathologist discovered a severe stab wound on the right side of the chest. This wound, possibly inflicted by a knife, resulted in death, according to the pathologist. The remains were subsequently identified as those

of Dale Andrew Devine.

On May 19, 1987, the defendant was in the custody of the Olympia Fields police department. The defendant made oral statements to the police and an assistant Cook County State's Attorney regarding his involvement in the murder of Devine. Later that day the defendant agreed to give a court-reported statement.

The statement indicated that during the fall of 1985 Devine was residing with the defendant. Devine and Ken Cheney became involved in a drug deal in which Devine apparently "ripped off" Cheney. The defendant contacted Jerry Feinberg and told him that Devine was at his residence. Feinberg went to the defendant's house, and the two proceeded to tie up Devine using an extension cord. The defendant then called Cheney and told him that Devine was at his residence. Cheney came over and, using a hypodermic needle, injected Devine with barbiturates. The defendant took approximately $100 currency from the pocket of Devine and gave it to Cheney.

The defendant, Feinberg and Cheney then put Devine into the defendant's automobile, and the four then drove to the Wilmington, Illinois, area. They took Devine out of the automobile, and Cheney asked Devine how he wanted to die, either by being stabbed with a knife or by injection by hypodermic needle. Devine indicated that he wanted to die by the injection.

Devine was taken to a wooded area by the three men, and Cheney injected Devine five or six times with an empty needle. Cheney was attempting to inject an air bubble into Devine's bloodstream. Apparently this did not have the desired effect, so Cheney took the knife and slit Devine's throat. Cheney then directed Feinberg and the defendant to stab Devine in the chest one time apiece. Feinberg and the defendant complied, and the three left the area.

Cheney, Feinberg and the defendant travelled to Cheney's residence, where they consumed alcoholic beverages and marijuana. Two days later Cheney and the defendant returned to the body. While the defendant waited in the car, Cheney doused the body with gasoline and set it afire.

The day after giving this statement to the police, the defendant was charged by complaint with murder, felony murder predicated on aggravated kidnapping, felony murder predicated on armed robbery, aggravated kidnapping and armed robbery. The grand jury returned indictments on all charges.

The defendant's first trial ended in a mistrial. The State filed an information in the cause, substantially repeating the charges in the indictment, but substituting a charge of robbery for that of armed rob-

bery. The defense filed a motion to dismiss based on improper venue, but the motion was denied.

The State's case included testimony of one who knew Devine, the person who discovered Devine's body, and medical and law enforcement officials who investigated Devine's murder. The defendant's statement was read to the jury. The State rested, and the defendant moved for a directed verdict, arguing, *inter alia,* that any robbery in the cause had occurred in Park Forest in Cook County, rather than Will County. This motion was denied.

The defense called three witnesses. The heart of the defense was the defendant's own testimony. The defendant testified that he did not kill, rob or kidnap Devine and insisted that Cheney had killed Devine. The defendant further testified that Cheney forced him and Feinberg to assist in the disposal of Devine's body and that Cheney had threatened them to remain silent. Several days later he and Cheney returned to the body and Cheney tried to burn it.

The defendant was found guilty of murder, robbery, felony murder predicated on aggravated kidnapping and aggravated kidnapping. The defendant was found not guilty of felony murder predicated on robbery. The court vacated the felony murder verdict and the aggravated kidnapping verdict. It then sentenced the defendant to concurrent terms of imprisonment of 60 years for murder and 7 years for robbery. The defendant filed this timely appeal, raising three issues for our consideration.

The defendant first contends that the trial court committed reversible error during the *voir dire* of the jury. The defendant alleges two significant defects in the manner prospective jurors were questioned. First, the trial court refused to ask the prospective jurors *all* of the questions offered by the defendant, and second, all prospective jurors were not thoroughly questioned during *voir dire.*

Prior to trial the defendant submitted a list of 47 questions he wanted the trial judge to ask prospective jurors during *voir dire.* Many of these questions had subparts, making the actual number of proffered questions substantially higher in number than 47. During the pretrial hearing the judge agreed to ask some of the questions as offered, ask some that were offered in another form and determined that others were repetitive and thus would not be asked.

A trial judge has the power to reasonably regulate the manner in which jurors are selected. (*People v. DeSavieu* (1983), 120 Ill. App. 3d 420, 426-27, 458 N.E.2d 504.) The decision of whether to permit supplemental questions in a *voir dire* examination is left to the discretion of the trial judge, and the standard for determining

whether the trial judge abused that discretion is whether the means employed to test impartiality have created a reasonable assurance that prejudice would be discovered if present. *People v. Bunch* (1987), 159 Ill. App. 3d 494, 510, 512 N.E.2d 748.

■ The exception to these general rules was discussed in *People v. Zehr* (1984), 103 Ill. 2d 472, 469 N.E.2d 1062. In *Zehr* the court held that a trial judge abuses his discretion if he fails to ask defense tendered questions during *voir dire* to determine if prospective jurors would have any hesitancy in returning a not guilty verdict if the People failed to sustain their burden of proof, to determine whether the jurors would hold it against the defendant if he does not testify at trial and to determine whether the jurors understand that the defendant is presumed innocent and does not have to offer evidence at trial. The court in *Zehr* held that there is no precise form which must be used to question the jurors concerning these principles of law.

In *People v. Emerson* (1987), 122 Ill. 2d 411, 522 N.E.2d 1109, *cert. denied* (1988), 488 U.S. 900, 102 L. Ed. 2d 235, 109 S. Ct. 246, the court held that the requirements of *Zehr* were satisfied if the trial judge covered those areas in general admonishments made to the jury and the trial judge asked if the jury would follow the law.

■ With these cases in mind, we turn now to the record. It is important to note that, since this was potentially a death penalty case, the trial judge conducted the *voir dire* by calling groups of jurors and questioning them generally and then allowing questioning of each potential juror individually by himself and counsel. A review of the record reveals that all of the jurors were generally admonished by the judge as to the law. Additionally, each juror, when questioned individually by the judge and the attorneys, was personally informed of the applicable legal doctrines outlined in *Zehr* and agreed to follow the law. It is also important to note that during *voir dire* the defense counsel never contended that the trial judge was violating the requirements of *Zehr* or was not asking sufficient questions to permit him to make proper use of his peremptory challenges. Instead, he argued only that the judge wasn't asking all of his proffered questions.

We are of the opinion that the general admonishments made by the judge as to the law, combined with the individual admonishments and questioning by both the judge and counsel, satisfied the guidelines set forth in *Zehr* and *Emerson*. We therefore find no error in the *voir dire*.

The second issue raised by the defendant contends that the trial judge abused his discretion in refusing to permit the defendant to back-strike a prospective juror.

One of the prospective jurors, William Shepherd, answered during *voir dire* questioning that he had a friend, Mr. Bazzani, who worked as a jailer at the Will County jail. Shepherd indicated that he and Bazzani occasionally discussed Bazzani's work, although Bazzani never mentioned names. The defense accepted and tendered Shepherd as a juror. This took place on a Friday.

The following Monday the defense indicated that during the weekend the defendant became aware that Bazzani was the jailer with whom he had had a "run in" at the jail. The defense counsel, stating his awareness of the judge's policy against back-striking, nonetheless moved to back-strike Shepherd. The trial court initially deferred ruling on the motion. The judge then allowed further questioning of Shepherd. During this questioning Shepherd indicated that the last time he had contact with Bazzani was at the beginning of the prior week. This was prior to Shepherd becoming a potential juror in the case. Shepherd stated that during that conversation the two did not discuss anything with regard to Bazzani's work or any inmate. At the close of the questioning, the defendant again moved to back-strike Shepherd, which the trial court denied.

The defendant contends that the trial court committed reversible error by refusing the defendant's request to use a peremptory challenge against Shepherd. On appeal, the defendant seems to imply that the trial judge was not aware that he could exercise discretion and allow back-striking. Apparently this is based on the fact that although the judge didn't allow the back-striking, he did allow further questioning of Shepherd. In any event, the defendant contends that the judge abused whatever discretion he exercised.

■ The Illinois Supreme Court reviewed the rules on back-striking in *People v. Moss* (1985), 108 Ill. 2d 270, 483 N.E.2d 1252. In *Moss*, the court held that under Supreme Court Rule 434(a) (107 Ill. 2d R. 434(a)) a judge has discretion to alter the traditional manner of selecting a jury as long as both sides know how the selection process will operate and that the method chosen doesn't unduly restrict the use of challenges. The defense counsel was aware of the judge's employment of a system other than the traditional method. The defense counsel tried to back-strike Shepherd, which went against the judge's system, and now claims that this was an abuse of discretion.

We are of the opinion that the reason the judge did not immediately deny the defendant's request to back-strike was because the judge wanted to ascertain whether Shepherd should have been dismissed for *cause*, rather than peremptorily. When the judge was satisfied, after questioning of Shepherd was completed, that Shepherd

could not be excused for cause, he exercised his discretion to deny the defendant's request to back-strike Shepherd. This seems to be a more plausible explanation than that the judge was confused about whether he could exercise discretion in this matter.

The defendant has cited *People v. Scheidt* (1983), 113 Ill. App. 3d 632, 447 N.E.2d 536. In *Scheidt* our court held that a trial judge has the power to allow a party to back-strike a juror after that juror has been tendered by the party. That power is discretionary and cannot be viewed as a right of the party requesting the motion. Simply because the court in *Scheidt* affirmed the trial court's power in that case to allow a back-strike does not warrant a finding by this court that the judge's act here, by not allowing a back-strike, was an abuse of discretion.

■■ In sum, the trial judge had discretion to alter the means by which the jury was selected. The defense counsel was aware of the manner selected by the judge. The denial of the defendant's motion to back-strike a juror was not an abuse of discretion.

The third issue raised by the defendant is whether he was proven guilty of robbery beyond a reasonable doubt. The defendant contends that his robbery conviction must be reversed for two reasons. First, the State's evidence, namely the defendant's statement, did not show the commission of the offense in Will County as alleged, and second, the State's evidence was totally uncorroborated by independent proof of the *corpus delicti*.

The State's evidence regarding the defendant's involvement in the robbery of Devine consisted of the defendant's statement. In the statement the defendant admitted that he had taken money from the pocket of Devine after Devine had been tied up at the defendant's house. The defendant's house was located at 475 Dogwood in Park Forest, Illinois. The defendant contends that this address is located in Cook, rather than Will, County, and therefore the State did not establish venue for the crime.

■■ In criminal prosecutions, the defendant shall have the right to trial by an impartial jury of the county in which the offense is alleged to have been committed. (Ill. Const. 1970, art. I, §8.) Venue is a material element of the crime and must be proved beyond a reasonable doubt. *People v. Toellen* (1978), 66 Ill. App. 3d 967, 970, 384 N.E.2d 480, citing *People v. Piehl* (1972), 6 Ill. App. 3d 296, 285 N.E.2d 612.

We agree with the defendant that the State failed to prove beyond a reasonable doubt that the robbery took place in Will County. Accordingly, we reverse the defendant's conviction for robbery.

The State argues that even if it didn't prove beyond a reasonable

doubt that the offense occurred in Will County, anytime a defendant is properly tried for felony murder in a county, that county also has jurisdiction to try the underlying felony. The State cites no authority for this proposition, and we believe it is an incorrect statement of the law.

In the instant case, the State properly brought the felony murder predicated on robbery charge in Will County, as that was the county in which the body was discovered. (Ill. Rev. Stat. 1987, ch. 38, par. 1—6(c).) As the State was permitted to bring the felony murder charge in Will County, the State was not required to prove that the underlying felony (robbery) took place in Will County. As long as the State proved that a robbery was committed and that during the course of that robbery the victim was killed and the body disposed of in Will County, a conviction for felony murder could be had.

As to the underlying felony, however, the defendant has a right to be tried in the county in which the offense allegedly occurred. The defendant did not waive this right. The alleged robbery took place in Cook County, rather than Will County. It was in Cook County where this offense should have been charged.

■ In regard to the State's argument regarding double jeopardy concerns, the defendant's reply brief correctly indicates that a defendant's request to have one crime in a "spree" tried in one county and another crime in the "spree" tried in another county does not bar the State from trying the offenses in separate prosecutions. *People v. McClellan* (1977), 46 Ill. App. 3d 584, 360 N.E.2d 1225; *People v. Ruiz* (1967), 82 Ill. App. 2d 184, 226 N.E.2d 438.

■ In the instant case, the complaint charged the defendant with the offense of robbery, alleging that it occurred in Will County when, in fact, it occurred in Cook County. The evidence was insufficient to warrant a finding of this charge and, thus, should be reversed. As indicated above, the State properly brought the felony murder predicated on robbery charge in Will County, as that was the county in which the body was discovered.

For the reasons listed above, the decision of the circuit court of Will County is affirmed as to the felony murder charge and reversed as to the underlying robbery charge.

Affirmed in part and reversed in part.

BARRY and STOUDER, JJ., concur.