THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LORENZO FAYNE, Defendant-Appellant.

Fifth District    No. 5—94—0671

Opinion filed July 16, 1996.—Rehearing denied September 16, 1996.

John J. O'Gara, Jr., of State Appellate Defender's Office, of Belleville, for appellant.

Robert Haida, State's Attorney, of Belleville (Norbert J. Goetten, Stephen E. Norris, and J. Stephen Bennett, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Following a jury trial in the circuit court of St. Clair County, defendant, Lorenzo Fayne, was convicted of first-degree murder in the killing of Aree Hunt, age six. The jury found defendant eligible for the death penalty but ultimately recommended a sentence other than death. The trial court sentenced defendant to natural life in the Department of Corrections. Defendant now appeals his conviction, arguing that the trial court erred in denying defendant's motion to suppress his confession because (1) defendant invoked his right to counsel, but custodial interrogation did not cease, and (2) defendant's rights to due process and equal protection under the United States and Illinois Constitutions were violated and, consequently, all *Miranda* waivers are invalid. *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966). We affirm.

# I

The facts of this case are as follows. On July 24, 1993, defendant, age 23 at the time of trial, was arrested in conjunction with the murder of another victim, Faith Davis. All told, defendant would confess to five murders in the Metro-East area. The East St. Louis fire department was called to the home of Davis in order to extinguish a fire. Upon investigating that fire, it was determined that Davis had been murdered. A trail of blood led from the home of Davis to the home of defendant's grandmother, where defendant was residing. After police talked to witnesses, defendant was arrested and brought in for questioning. The East St. Louis police department contacted the Illinois State Police to assist in the investigation.

Special Agent Joe Bates of the Illinois State Police, an 11-year veteran of the Illinois State Police, interviewed defendant for the first time on the morning of July 24, 1993. Questioning took place at the East St. Louis police department. Defendant was given his *Miranda* warnings at 10:45 a.m. and made a statement at 11:50 a.m. Defendant implicated himself in a burglary at the home of Faith Davis, but not in her murder. Bates immediately told defendant that he did not believe what defendant told him and that he would see to it that defendant was placed in jail if defendant was at all involved in her death.

On July 25, 1993, Bates applied for an arrest warrant and a search warrant, both of which were issued. On July 26, 1993, defendant was arraigned by a judge other than Judge Donovan on the charge of residential burglary. The defendant was charged by criminal complaint. No record of that proceeding exists, other than a court order reflecting the arraignment and a plea of not guilty. The order fails to reflect whether defendant indicated private counsel, whether the public defender was appointed, or whether the issue of counsel even arose.

On July 27, 1993, Bates, along with Detective Crenshaw of the East St. Louis police department, went to the jail to talk with defendant. At that time, police officers failed to give defendant the *Miranda* warnings, and defendant indicated that he did not want to talk about the case. On Thursday, July 29, 1993, Bates returned to the jail to talk to defendant. Bates did advise defendant of his *Miranda* rights at this time. According to Bates, defendant indicated that he understood his rights and waived them. Bates testified at the suppression hearing that defendant orally confessed to killing Faith Davis and told Bates he would give a written statement on the following day. Defendant also told him he had other information which would shock Bates. Bates testified that as he was leaving the jail on

July 29, 1993, defendant requested him to come back the next day. Bates specifically stated: "He told me that he liked me. I seemed to be like the big brother that he never had. I was the only one that would really listen to him. And he seemed to be very comfortable with me."

On Friday, July 30, 1993, Bates again met with defendant. Bates attempted to give defendant the *Miranda* warnings again, but defendant did not want to be given the warnings. According to Bates, defendant did not want to take his rights but just wanted to talk. Defendant told Bates that if he waived his rights, what he told Bates could be used in court, but if he did not receive the *Miranda* warnings, the statement could not be used in court. Defendant requested that a note be signed by Bates indicating the confidential nature of their meeting. Bates testified that in his previous 11 years with the Illinois State Police, a suspect had never made such a request. Bates was unsure how to handle such a situation, but he ultimately signed a note which stated: "This conversation is between Lorenzo Fayne and S.A. Bates and no one else. It is completely confidential." During the ensuing conversation, defendant talked openly to Bates again, admitting involvement in the Davis murder. At the end of the conversation, defendant requested information on the possible punishments he would receive if convicted of homicide. Bates informed defendant that only the State's Attorney could comment on possible punishment. Defendant then requested to talk with a State's Attorney.

On Monday, August 2, 1993, Bates, accompanied by an assistant State's Attorney, Jim Stern, went to the St. Clair County jail and met with defendant. Defendant was given his *Miranda* warnings, via a written form which defendant initialed. After signing the waiver of his *Miranda* rights and being introduced to Stern, defendant asked, "Where is my lawyer?" Bates told defendant he would call the public defender's office and have a public defender sent over to the jail. Stern then explained that if the public defender had not been assigned to the case, "they probably will not come." Bates told defendant, "If one has not been assigned to you, you heard him, they won't come." Bates and Stern then prepared to leave the interview room. Bates buzzed the guard and the two waited for the door to open. As they waited, a general conversation occurred in which Bates explained to defendant that other police officers would come by to talk to defendant about other cases. Defendant shrugged his shoulders and stated: "So what, do they think I'm crazy?" When the door to the interview room was opened, Stern left. Defendant requested Bates to "hold up for a minute." Defendant explained to

Bates that the assistant State's Attorney made him nervous and that next time Bates should come back alone. However, defendant knew from previous conversations with Bates that Bates was going on vacation and was in charge of a family reunion. Defendant did not want his case to interfere with Bates's vacation. Defendant told Bates to come back on August 16, 1993, after Bates's vacation and, at that time, defendant would give Bates a written statement in regard to the Davis murder.

On Wednesday, August 4, 1993, Agent Calvin Dye, Bates's partner, received a call at headquarters from someone identifying himself as defendant and requesting Bates to come to the jail and talk to him. On August 10, 1993, Master Sergeant Robyn Blaha, who had been conducting an ongoing investigation in the instant case, the murder of Aree Hunt, was informed by a forensic scientist that a latent print recovered from the thigh of Aree Hunt matched the fingerprint of defendant. Hunt was murdered in July 1989, and the case remained unsolved. Blaha contacted Bates and the two arranged to meet at the jail on Tuesday, August 10, 1993, at 1 p.m. to interview defendant.

On August 10, 1993, defendant was advised of his *Miranda* rights. The agents told defendant that his fingerprint matched the latent print recovered from the body of Aree Hunt. Defendant requested time to think about the information and asked the agents to return the next day. On August 11, 1993, Bates and Blaha returned and administered *Miranda* warnings. At that time, defendant confessed to the murder of Aree Hunt. Defendant gave a written statement describing his involvement in the death of Aree Hunt. The statement began at 8:55 a.m. and concluded at 9:50 a.m. At 11:37 a.m., on the same day, Bates returned and again administered *Miranda* warnings. Defendant then gave a five-page written statement, confessing to the murder of Faith Davis.

On Friday, August 13, 1993, Blaha and Bates returned to inform defendant of articles which had appeared in the Belleville News-Democrat, a general circulation newspaper. Defendant was upset that his grandmother would read the articles and also that Bates had been called off vacation to talk to him. The conversation ended with defendant telling Bates to return to talk with him on August 16, 1993, when his vacation was over. Defendant wanted Bates to come alone and assured Bates he would give a written statement.

Bates returned to the jail on August 16, 1993, and advised defendant of his *Miranda* rights at 12:53 p.m. Defendant stated he understood and voluntarily waived his rights. Bates obtained a written statement regarding the death of Fallon Flood. The statement

concluded at 2:15 p.m. Defendant was again advised of his *Miranda* rights at 2:17 p.m. Defendant declared that he understood and waived his rights. Bates then obtained a written statement regarding the death of Glenda Jones. The statement concluded at 4:32 p.m. Defendant was given his *Miranda* warnings again at 4:36 p.m. and again declared that he understood and waived his rights. Bates obtained a written statement regarding the death of Latrondra Dean. The statement concluded at 7:38 p.m. Defendant was again advised of his *Miranda* rights at 8:05 p.m. Defendant again stated that he understood and waived his rights. Defendant gave a written statement admitting to the sexual assault of Faith Davis. This statement concluded at 9:08 p.m.

On August 17, 1993, defendant was charged in the instant case, and the public defender was appointed. On January 21, 1994, a motion to suppress defendant's confession was filed. Motions to suppress were filed in the other cases in which defendant was charged. The motions were combined, and a hearing followed. The trial court found that the police had probable cause to arrest defendant and that defendant's statements on July 24, 1993, were admissible. The trial court further found that defendant's sixth amendment right to counsel (U.S. Const., amend. VI) attached at the arraignment on July 26, 1993, and that the murder of Faith Davis was related to the residential burglary charge on which defendant was arraigned. The trial court found that all statements made by defendant on July 27, 1993, were in violation of *Miranda* and not admissible but that such statements were voluntary and that defendant did not invoke his right to counsel on that date. The trial court then found that under *Patterson v. Illinois*, 487 U.S. 285, 101 L. Ed. 2d 261, 108 S. Ct. 2389 (1988), defendant's statements on July 29, 1993, were admissible. The trial court found that defendant's statements on July 30, 1993, were inadmissible because they were in violation of *Miranda.* However, the trial court found that the July 30, 1993, statements were voluntary and that defendant did not invoke his right to counsel on that date. The trial court found that defendant did invoke his right to counsel on August 2, 1993, but that defendant reinitiated contact with the police on that date, consistent with the requirements of *Edwards v. Arizona*, 451 U.S. 477, 68 L. Ed. 2d 378, 101 S. Ct. 1880 (1981). The trial court also found that defendant further initiated contact with the police when he called the Illinois State Police headquarters on August 4, 1993, and requested Bates to return to the jail to talk to him.

The trial court next found that the interrogations on August 10 and 11, 1993, exclusively involved the investigation into the death of

Aree Hunt and that the Hunt investigation was in no way related to the residential burglary of July 24, 1993, or to the death of Faith Davis. The trial court, citing *McNeil v. Wisconsin*, 501 U.S. 171, 115 L. Ed. 2d 158, 111 S. Ct. 2204 (1991), and *People v. Hayes*, 139 Ill. 2d 89, 564 N.E.2d 803 (1990), found that defendant's sixth amendment right to counsel did not attach to the interrogations regarding Aree Hunt. The trial court found defendant's statements on August 10, 1993, and August 11, 1993, admissible. The trial court next found that the statements made on August 13, 1993, were in violation of *Miranda* and were inadmissible but that such statements were voluntary and that defendant did not invoke his right to counsel. Finally, regarding the eight hours of questioning on August 16, 1993, the trial court found that all such statements were admissible. We note that the statements of August 16, 1993, play no part in this appeal.

Testimony in the instant case began on August 11, 1994, and continued through August 18, 1994. The State called Master Sergeant Robyn Blaha to testify at trial. Defendant again objected to the admission of his confession and renewed his motion to suppress. The motion was denied and defendant's confession was read to the jury. In his confession, defendant admitted to killing Aree Hunt. Defendant stated he was visiting his grandparents in East St. Louis during the summer of 1989 and was out walking alone one night when he happened upon two young boys. Defendant lured Aree away by asking Aree to show him where someone lived. While walking, defendant "started thinking about how it would feel to break someone's neck." Defendant directed Aree underneath an underpass and twisted Aree's neck until he "heard it break." Aree went limp but made some gurgling noises, so defendant picked Aree up and slammed his head against a concrete wall. Defendant took off all of Aree's clothes, sexually assaulted him, and threw his body in some weeds.

Defendant asserted an insanity defense, which the jury rejected by returning a guilty verdict. The jury found defendant eligible for the death penalty but refused to impose it. The trial court imposed a sentence of natural life in the Department of Corrections. Defendant now appeals.

## II

Defendant first contends that the trial court erred in denying defendant's motion to suppress, because defendant invoked his right to counsel but custodial interrogation failed to cease. Defendant argues that he should have been appointed counsel on July 26, 1993, and since the record is void of any discussion of an attorney on that date, we cannot presume that he waived his right to counsel. Accord-

ing to defendant, the ensuing discussions between defendant and Agent Bates, specifically the discussion, without *Miranda* warnings, of July 30, 1993, and a written agreement between defendant and Bates promising confidentiality, show a systematic deprivation of counsel under both the fifth and sixth amendments of the United States Constitution and article I, sections 2 and 10, of the Illinois Constitution of 1970 and invalidate all *Miranda* warnings after July 26, 1993. The State replies that the confession of August 11, 1993, was totally unrelated to the oral statement of July 30, 1993, and that defendant was properly given *Miranda* warnings prior to giving a confession in the death of Aree Hunt. The State contends that there is nothing in the record to show that the second statement is a product of the first statement. If anything, the State believes that the events of July 30, 1993, signify and underscore defendant's full understanding of his rights and a waiver of these rights due to the frequency they were given during this period of interrogation. Furthermore, Agent Bates specifically told defendant he would go get an attorney, but defendant reinitiated contact before Agent Bates even left the jail. The State concedes that defendant's sixth amendment right to counsel may have attached to the Davis homicide on July 26, 1993, but his sixth amendment right to counsel did not attach to the prearraignment questioning concerning the Aree Hunt homicide until defendant confessed to the murder on August 11, 1993. The State contends that the trial court properly denied defendant's motion to suppress his statement confessing to the murder of Aree Hunt. We agree.

■ The sixth amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right *** to have the Assistance of Counsel for his defence." U.S. Const., amend. VI. The fifth amendment provides that "[n]o person *** shall be compelled in any criminal case to be a witness against himself." U.S. Const., amend. V. Our state constitutional privilege against self-incrimination is found in article I, section 10, of the Illinois Constitution of 1970, which provides, "[n]o person shall be compelled in a criminal case to give evidence against himself nor be twice put in jeopardy for the same offense." Ill. Const. 1970, art. I, § 10. In *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966), the Supreme Court established a number of guarantees designed to counteract the "inherently compelling pressures" of custodial interrogation. Most importantly for purposes of this appeal, the *Miranda* decision held that a person under such interrogation has the right to have counsel present. However, *Miranda* also established that statements elicited during a custodial interrogation are admissible if the prosecution can

establish that a suspect "knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." *Miranda*, 384 U.S. at 475, 16 L. Ed. 2d at 724, 86 S. Ct. at 1628. It is well settled that once a suspect asserts the right to counsel, not only must the current interrogation cease, but he may not be approached for further interrogation unless and "until counsel has been made available to him." *Edwards*, 451 U.S. at 484-85, 68 L. Ed. 2d at 386, 101 S. Ct. at 1885. If the police later initiate an encounter without the presence of counsel, assuming there has been no break in custody, the suspect's statements are presumed involuntary and are thus inadmissible at trial. *McNeil*, 501 U.S. at 177, 115 L. Ed. 2d at 167-68, 111 S. Ct. at 2208. The trial court found support for its decision in the case of *McNeil*.

■ In *McNeil*, the Supreme Court held that the defendant's invocation of his sixth amendment right to counsel during a judicial proceeding as to one offense does not constitute the invocation of defendant's fifth amendment right to counsel under *Miranda* as to the uncharged offenses. *McNeil*, 501 U.S. at 176-82, 115 L. Ed. 2d at 167-71, 111 S. Ct. at 2208-11. In support of its holding, the *McNeil* court offered the following distinctions between the sixth and fifth amendments. First, the court noted that the sixth amendment right to counsel attaches at or after the initiation of adversary judicial proceedings, *i.e.*, a formal charge, preliminary hearing, indictment, information, or arraignment. *McNeil*, 501 U.S. at 175, 115 L. Ed. 2d at 166-67, 111 S. Ct. at 2207. The fifth amendment right to counsel, however, applies strictly to custodial interrogations and attaches whether or not formal judicial proceedings have been initiated. Second, the *McNeil* court noted that the purpose of the sixth amendment is to protect an unaided layman at critical confrontations with law enforcement officials who are expert adversaries, after the adverse positions of these parties have been solidified with respect to a particular alleged crime. *McNeil*, 501 U.S. at 177-78, 115 L. Ed. 2d at 168, 111 S. Ct. at 2208-09. The purpose of invoking the *Miranda-Edwards* fifth amendment right to counsel, on the other hand, is to protect "the suspect's 'desire to deal with the police only through counsel.'" *McNeil*, 501 U.S. at 178, 115 L. Ed. 2d at 168, 111 S. Ct. at 2209, quoting *Edwards*, 451 U.S. at 484, 68 L. Ed. 2d at 386, 101 S. Ct. at 1885. Third, the *McNeil* court noted that whereas the sixth amendment right to counsel is "offense specific," which means that it cannot be invoked for all future prosecutions (*McNeil*, 501 U.S. at 175, 115 L. Ed. 2d at 166, 111 S. Ct. at 2207), the *Miranda-Edwards* fifth amendment right to counsel is not "offense specific," which means that once a suspect asserts his right, further police-initiated

interrogation as to *any* offense is prohibited unless counsel is present. *McNeil*, 501 U.S. at 177, 115 L. Ed. 2d at 168, 111 S. Ct. at 2208, citing *Arizona v. Roberson*, 486 U.S. 675, 100 L. Ed. 2d 704, 108 S. Ct. 2093 (1988). Based on these critical distinctions between the sixth and fifth amendments' right to counsel, the *McNeil* court found it factually incorrect and inadvisable as a matter of public policy to infer that the invocation of the sixth amendment right to counsel as to one offense constituted the invocation of the fifth amendment right to counsel as to unrelated and uncharged offenses. *McNeil*, 501 U.S. at 180-81, 115 L. Ed. 2d at 170, 111 S. Ct. at 2210. Our own supreme court has adopted the *McNeil* decision and has determined that our state's constitutional privilege against self-incrimination is not broader than its federal counterpart. *People v. Perry*, 147 Ill. 2d 430, 590 N.E.2d 454 (1992).

■ After reviewing the facts in the instant case, we conclude that defendant gave the August 11, 1993, statement confessing to the murder of Aree Hunt before his sixth amendment right to counsel with respect to the Aree Hunt case attached. Defendant was arrested on July 24, 1993, in conjunction with the homicide of Faith Davis. On July 26, 1993, defendant was arraigned on a charge of residential burglary in conjunction with the Faith Davis case. Defendant was interrogated numerous times over the course of the next three weeks, but he was not charged with the instant crime until August 17, 1993. We find that on July 26, 1993, defendant's sixth amendment right to counsel only attached as to the residential burglary charge. We decline to determine whether defendant's sixth amendment right to counsel in the murder of Faith Davis attached on that day, as that is not the question before us.

Even assuming, *arguendo*, that defendant's sixth amendment right to counsel with respect to the Aree Hunt case came into existence with the July 26, 1993, indictment on the residential burglary charge, it would not preclude the admission into evidence of uncounseled statements if defendant knowingly and intelligently chose to communicate with police without the assistance of counsel. *Patterson v. Illinois*, 487 U.S. 285, 101 L. Ed. 2d 261, 108 S. Ct. 2389 (1988).

In *Patterson*, the defendant claimed that because his sixth amendment right to counsel arose with his indictment, the police were thereafter barred from initiating questioning with him. The Supreme Court disagreed, finding:

> "The fact that petitioner's Sixth Amendment right came into existence with his indictment, *i.e.*, that he had such a right at the time of his questioning, does not distinguish him from the preindictment interrogatee whose right to counsel is in existence and

available for his exercise while he is questioned. Had petitioner indicated he wanted the assistance of counsel, the authorities' interview with him would have stopped, and further questioning would have been forbidden ***." *Patterson*, 487 U.S. at 290-91, 101 L. Ed. 2d at 271, 108 S. Ct. at 2394.

The *Patterson* court went on to explain that *Miranda* warnings given to the defendant were sufficient to make the defendant aware of his sixth amendment right to counsel during post-indictment questioning, so that the defendant's waiver could be considered knowing and intelligent. *Patterson*, 487 U.S. at 294-300, 101 L. Ed. 2d at 273-77, 108 S. Ct. at 2395-99.

The question now becomes whether defendant's fifth amendment right to counsel was invoked. The trial court specifically found that defendant did, in fact, invoke his fifth amendment right to counsel when, on August 2, 1993, defendant asked Agent Bates and the accompanying assistant State's Attorney, "Where is my lawyer?" The trial court also found that defendant initiated further contact with the police consistent with the requirements of *Edwards*, 451 U.S. 477, 68 L. Ed. 2d 378, 101 S. Ct. 1880. We agree.

Invocation of the *Miranda* right to counsel "requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney." *McNeil*, 501 U.S. at 178, 115 L. Ed. 2d at 169, 111 S. Ct. at 2209. Here, the trial court found that defendant's statement on August 2, 1993, "Where is my lawyer?" was sufficient to invoke defendant's *Miranda* right to counsel. We also believe that defendant's statement was sufficiently clear to alert both Agent Bates and the assistant State's Attorney that defendant was requesting an attorney so that, under *Edwards*, defendant could not have been questioned further until an attorney was present. Bates and Stern both testified that they believed that defendant's statement was a request for an attorney and, accordingly, halted the interview. Agent Bates and Assistant State's Attorney Stern showed restraint and sound judgment in halting the interview after defendant asked "Where is my lawyer?"

*Edwards*, however, acknowledged that a suspect may waive his fifth amendment right to counsel after it is invoked. In order to establish waiver, a two-prong analysis must be considered: first, the preliminary inquiry is whether the defendant initiated the conversation in a manner evincing a willingness and a desire for a generalized discussion about the investigation; and second, the inquiry is whether by the defendant's initiation of conversation, coupled with the totality of other circumstances, the defendant knowingly and intelligently waived the right to counsel's presence during question-

ing. *People v. Hicks*, 132 Ill. 2d 488, 493, 548 N.E.2d 1042, 1044 (1989), citing *Oregon v. Bradshaw*, 462 U.S. 1039, 77 L. Ed. 2d 405, 103 S. Ct. 2830 (1983).

Here, Agent Bates and Assistant State's Attorney Stern stopped interrogating defendant when defendant raised the issue of a lawyer. However, after the guard came and the assistant State's Attorney exited the interview room, defendant requested that Bates "hold up for a minute." Defendant then told Bates that the assistant State's Attorney made him nervous but that he wanted Bates to come back alone so that defendant could discuss the Faith Davis murder, and defendant assured Bates that he would give him a voluntary written statement with regard to the murder of Faith Davis. On Wednesday, August 4, 1993, defendant called Bates's partner and requested that Bates come to the jail to see defendant. Such acts show a desire for a generalized discussion about the case, and the totality of the circumstances indicate that defendant knowingly and intelligently waived his right to counsel.

We do not find Assistant State's Attorney Stern's explanation, that if a public defender had not been appointed to defendant, a public defender would not come over to the jail on behalf of defendant, to be coercive. Stern was only pointing out a fact with regard to the day-to-day workings of a public defender's office. Given defendant's long history of contact with the criminal justice system, he was certainly well aware that the public defender's office might not be immediately available and that he would most likely have to wait for a public defender. Furthermore, the statement made by Bates that other officers most likely would come and question defendant was not improper, as Bates was pointing out to defendant what he could expect because of statements made by defendant that he was potentially involved in other unsolved homicides.

Nevertheless, defendant insists that, considering the totality of the circumstances, we must find that the confession is tainted and violative of numerous statutory and constitutional rights. We certainly agree that some of the circumstances surrounding this case raise concerns. For example, it is undeniable that defendant should have been appointed an attorney on July 26, 1993. Section 109—1 of the Code of Criminal Procedure of 1963 directs a judge to advise the defendant of his right to counsel and, if defendant is indigent, to appoint a public defender or other licensed attorney to represent him. 725 ILCS 5/109—1(b)(2) (West 1992). If the record before us indicated that an attorney had been appointed on July 26, 1993, our review of this matter would have been less complicated. If the trial court had simply rubber-stamped the actions of the police thereafter, we would

find defendant's arguments more convincing. However, the trial court's nine-page order is well reasoned and shows careful consideration of the facts and law. After our review of the record, we cannot say the trial court's decision is against the manifest weight of the evidence.

On the one hand, we have a defendant who is left in jail for nearly three weeks, without benefit of counsel, prior to confessing to the instant murder. However, over the course of those three weeks, defendant signed numerous *Miranda* waivers and agreed to oral waivers on other occasions. We also have a defendant who reinitiated contact with police officers on two occasions, once on August 2, 1993, when he asked Agent Bates to "hold up a minute," and two days later when he called Agent Bates's partner requesting to speak to Agent Bates. Defendant confessed to the instant crimes after being told that his fingerprint was discovered on the victim's thigh. He was properly given *Miranda* warnings on August 10, 1993, and August 11, 1993, in conjunction with his confession in the instant case. Moreover, defendant showed the savvy that only one previously involved in the criminal system would have acquired, by refusing *Miranda* warnings on at least one occasion so that he could talk to Agent Bates without fear of reprisal and by asking for a note ensuring confidentiality. Defendant's actions indicate that he, in fact, understood the nature of such warnings and realized that by confessing on August 11, 1993, to the murder of Aree Hunt, without asking for a note and by accepting *Miranda* warnings, the five-page written statement could be used against him.

For the foregoing reasons, the judgment of the circuit court of St. Clair County is affirmed.

Affirmed.

HOPKINS, P.J., and MAAG, J., concur.