THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LORENZO FAYNE, Defendant-Appellant.

Fifth District No. 5—96—0333

Opinion filed October 16, 1998.

404

Daniel M. Kirwan and Rita K. Peterson, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Robert Haida, State's Attorney, of Belleville (Norbert J. Goetten, Stephen E. Norris, and Gerry R. Arnold, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Defendant, Lorenzo Fayne, was charged in the circuit court of St. Clair County with five separate charges of first-degree murder (Ill. Rev. Stat. 1991, ch. 38, par. 9—1(a) (now 720 ILCS 5/9—1(a) (West 1996))). In cause No. 93—CF—785, defendant was charged with the murder of Aree Hunt, age six; in cause No. 93—CF—786, defendant was charged with the murder of Faith Davis, age 17; in cause No. 93—CF—944, defendant was charged with the murder of Fallon Flood, age nine; in cause No. 93—CF—945, defendant was charged with the murder of Glenda Jones, age 17; and in cause No. 94—CF—66, defendant

was charged with the murder of Latonda Dean, age 14. The first case that proceeded to trial was No. 93—CF—785. In that case, after a jury trial, defendant was convicted of first-degree murder in the death of Aree Hunt. At a separate sentencing hearing, the jury could not agree that there were no mitigating factors sufficient to preclude the imposition of the death penalty. The trial court subsequently sentenced defendant to natural life in prison. Defendant's conviction and sentence were affirmed by this court in *People v. Fayne*, 283 Ill. App. 3d 382, 669 N.E.2d 1172 (1996).

In one of the remaining untried cases, No. 93—CF—786, defendant filed a motion to dismiss and to bar a death penalty sentencing hearing on the basis that the decision not to impose the death penalty after the murder conviction for the death of Aree Hunt barred any successive capital sentencing hearing. Defendant argued he would be subjected to double jeopardy since in the Aree Hunt sentencing hearing the State had already presented evidence of all the murders. Defendant later filed motions to dismiss in the other remaining cases, No. 93—CF—944, No. 93—CF—945, and No. 94—CF—66. The trial court denied the pretrial motions to dismiss, and the cases were consolidated for appeal. The issue we are asked to address is whether the State is barred from seeking the death penalty in the remaining four cases pending against defendant when the question of whether defendant should be put to death was already decided in No. 93—CF—785 and the jury chose to impose a sentence other than death. We affirm.

## FACTS

We recite only those facts necessary for an understanding of this appeal. On July 24, 1993, defendant was arrested in conjunction with the murder of Faith Davis, after the East St. Louis fire department was called to the Davis home to extinguish a fire. An investigation of the fire determined that Davis had been murdered. A trail of blood led from Davis's home to the home of defendant's grandmother, where defendant was residing. After the police talked to witnesses, defendant was arrested and brought to the East St. Louis police department for questioning. The East St. Louis police department contacted the Illinois State Police to assist in the investigation. Ultimately, defendant confessed not only to the murder of Davis, but also to the murders of four other victims.

The first of the five murder cases to be prosecuted was No. 93—CF—785. For a full recitation of the facts in that case, see *People v. Fayne*, 283 Ill. App. 3d 382, 669 N.E.2d 1172 (1996). Defendant, who was age 23 at the time of that trial, asserted an insanity defense,

which the jury rejected by returning a guilty verdict. The State sought the death penalty. A sentencing hearing was conducted from August 16, 1994, through August 18, 1994. At the hearing, the State introduced evidence concerning each of the four remaining murders with which defendant was charged. For example, the State introduced People's exhibit 39, which contained five- by seven-inch color photographs of each of the five victims defendant was accused of killing, along with each person's age, residence, date of death, manner of death, and location where the body was found. Graphic pictures of each of the crime scenes and the victims were introduced into evidence over defendant's objection. In addition to Aree Hunt, defendant's victims were identified as Fallon Flood, Glenda Jones, Faith Davis, and Latonda Dean.

Flood's body was found on the floor of a local high school in an abandoned locker room with a belt tightened around her neck and her underwear around her ankles. Defendant's statement admitting to the murder of Flood was introduced into evidence. In that statement, defendant admitted that he choked Flood and attempted to rape her.

Glenda Jones died as a result of stab wounds. Her body was badly decomposed when it was found. Jones's body was clothed, but her bra was turned inside out. Defendant's statement, in which he admitted that he stabbed Jones and had sex with her, was admitted into evidence. In that statement, defendant stated that he first approached Jones with a knife but that later she consented to sex with defendant. According to defendant, Jones even discussed starting a relationship with him. However, something "snapped" in defendant, and he ended up stabbing Jones.

Faith Davis's nude body was found facedown bent over a coffee table with her knees on the floor and her legs spread apart. She had several stab wounds in her upper chest and back. The crime scene indicated that she died in one area and then was dragged over to the coffee table. A large amount of petroleum jelly was spread on her buttocks, and she had been sexually assaulted. Defendant's statement admitting to stabbing Davis and then returning to sexually assault her was introduced into evidence.

Latonda Dean's nude body was found lying in a bathtub. She died as a result of 24 stab wounds, mainly in her chest and abdomen. Defendant's statement admitting that he raped and stabbed Dean was admitted into evidence.

Defendant presented a number of witnesses in mitigation. The evidence showed that defendant's mother drank heavily and took drugs throughout her pregnancy with defendant. Defendant's mother admitted to hitting defendant in the head as a form of punishment. She

believed that this was the way to punish a child. It was not until after a child care agency intervened and specifically told her that this was an improper means of disciplining that she realized that anything was wrong with it. Defendant's mother, a crack cocaine addict and an alcoholic, beat defendant with anything within reach, including broom handles and extension cords. Defendant's biological father was found in a Veterans Administration mental hospital and is a diagnosed schizophrenic. Defendant has had virtually no contact with him. Defendant's stepfather was an alcoholic, and he often beat defendant. On one occasion, he choked defendant until defendant lost consciousness.

Defendant's grandmother and sister testified about the abusive home environment in which defendant was raised. Defendant's grandmother explained that defendant was raped by a neighborhood boy when defendant was seven years old. The boy who raped defendant was approximately four years older. The police were not called. Instead, defendant's stepfather beat him after defendant told him that he had been raped. There was testimony that defendant had been raped on other occasions, usually when he was serving time in a juvenile facility for one of his many brushes with the law. Experts testified that defendant has limited intellectual abilities and a low IQ. Defendant suffered brain damage from the beatings to which he was subjected. At the conclusion of the sentencing hearing, the jury could not agree that there were no mitigating factors sufficient to preclude the imposition of the death penalty. The trial judge then sentenced defendant to natural life in prison. As previously set forth, we affirmed in *People v. Fayne*, 283 Ill. App. 3d 382, 669 N.E.2d 1172 (1996).

On March 15, 1996, defendant filed a motion to dismiss and to bar a death penalty hearing in No. 93—CF—786, on the basis that defendant would be subjected to double jeopardy because the State had already presented evidence of all five murders in the first sentencing hearing. Defendant argued he could not again be exposed to the death penalty. Defendant later filed the same motion in the remaining three cases. On April 24, 1996, the trial court denied defendant's motion in No. 93—CF—786. On June 5, 1996, the trial court denied defendant's pretrial motion to dismiss in No. 93—CF—944, No. 93—CF—945, and No. 94—CF—66. The cases were consolidated on appeal. The State moved to dismiss defendant's appeal on the basis that we lacked jurisdiction. On June 6, 1998, we denied the State's motion to dismiss.

## ANALYSIS

### I. JURISDICTION

■ We first address the State's ongoing contention that this court

has no jurisdiction to hear this appeal. The State maintains that we have no jurisdiction under Supreme Court Rule 604(f) (145 Ill. 2d R. 604(f)). However, the State fails to offer any new reasons for dismissal not previously considered in our June 6, 1998, order rejecting the State's motion to dismiss. The State merely urges us to reconsider our order denying its motion to dismiss. As defendant points out, whether the State is barred from seeking the death penalty in the four remaining cases in which defendant was charged with separate murders will affect each trial in numerous ways, including whether potential jurors can be asked whether they support or oppose the death penalty (see *People v. Cloutier*, 156 Ill. 2d 483, 622 N.E.2d 774 (1993)) and how many peremptory challenges are granted. In a capital case, 14 peremptory challenges are granted, whereas in cases involving imprisonment, only 7 are granted. 134 Ill. 2d R. 434(d). We find that it would not be a prudent use of judicial resources to wait to determine the double jeopardy issue until sentences are imposed in the remaining four cases. To wait to decide the issue would promote repetitive litigation and waste judicial resources. In addition, Supreme Court Rule 604(f) provides:

> "(f) Appeal by Defendant on Grounds of Former Jeopardy. A defendant may appeal to the Appellate Court the denial of a motion to dismiss a criminal proceeding on grounds of former jeopardy." 145 Ill. 2d R. 604(f).

We conclude that Supreme Court Rule 604(f) specifically allows this appeal. Accordingly, we have jurisdiction over this appeal.

## II. DOUBLE JEOPARDY

Defendant maintains that the principles of double jeopardy and collateral estoppel bar the State from seeking the death penalty in the remaining four cases pending against defendant because the question whether defendant should be put to death was already decided in No. 93—CF—785 and the jury chose to impose a sentence other than death. The earlier proceeding on which defendant relies is the St. Clair County prosecution for the murder of Aree Hunt. In that prosecution, during the first phase of the bifurcated sentencing hearing the jury found defendant eligible for the death penalty, but following the second phase of the sentencing hearing, during which evidence was presented in aggravation and mitigation, the jury could not agree that there were no mitigating factors sufficient to preclude the imposition of the death penalty. The trial judge then sentenced defendant to natural life in prison. Defendant points out that all these murders occurred in the same county, specifically within a one-mile radius of each other, that "[t]he State referred to defendant as a 'serial sexual offender,' " and that "all of the murders were part of a pattern of behavior repeated for sexual gratification that defendant achieved in

conjunction with the person's death." Defendant admits that the jury in the first case that went to trial did not have his convictions in the remaining murders to consider in aggravation, but he insists that because it had his confessions, as well as testimony concerning the circumstances of all five murders, the rejection of the death penalty in the first case tried precludes the imposition of the death sentence in any of the remaining four cases. We disagree.

 ■ In general, a death penalty acquittal bars the State from seeking the death penalty again on that conviction. *Poland v. Arizona*, 476 U.S. 147, 90 L. Ed. 2d 123, 106 S. Ct. 1749 (1986); *Bullington v. Missouri*, 451 U.S. 430, 68 L. Ed. 2d 270, 101 S. Ct. 1852 (1981); *People v. Davis*, 112 Ill. 2d 78, 491 N.E.2d 1163 (1986). The rationale for such a ruling is that the protections afforded by the double jeopardy clause are applicable to defendants in such proceedings because of the trial-type nature of a capital sentencing hearing. *Bullington v. Missouri*, 451 U.S. 430, 68 L. Ed. 2d 270, 101 S. Ct. 1852 (1981). However, our own supreme court has determined that an earlier decision not to impose the death penalty for a capital murder conviction does not bar the imposition of the death penalty in a later case involving a different murder conviction, even though the earlier sentencing hearing involves the same aggravating and mitigating factors presented at the later sentencing hearing. *People v. Page*, 155 Ill. 2d 232, 614 N.E.2d 1160 (1993) (*Page I*); *People v. Page*, 156 Ill. 2d 258, 620 N.E.2d 339 (1993) (*Page II*).

Page I and Page II involved the same defendant, Patrick Page. Page was charged with three separate murders. His victims were John Goodman, Andrew Devine, and Charles Howell. In *Page I*, the defendant was convicted in the circuit court of Cook County of, *inter alia*, the murder of John Goodman. During the first stage of the sentencing hearing, the State presented evidence of the defendant's conviction in 1988 in Will County for the murder of Andrew Devine. That murder occurred sometime in 1985. *Page I*, 155 Ill. 2d at 242, 614 N.E.2d at 1164. The jury determined that the defendant was eligible for the death penalty. 155 Ill. 2d at 243, 614 N.E.2d at 1164. During the second stage of the sentencing hearing, the State introduced additional evidence of the defendant's criminal history, including the defendant's confession to the 1985 murder of Charles Howell in Cook County. Howell was murdered in an attempt to cover up the Devine murder. 155 Ill. 2d at 243, 614 N.E.2d at 1164. The defendant argued that the principles of double jeopardy and collateral estoppel barred the imposition of the death penalty in the Goodman murder. The defendant relied on the 1988 Will County prosecution in which he was convicted of the murder of Andrew Devine. 155 Ill. 2d at 270, 614 N.E.2d at

1177. In that prosecution, during the first stage of the sentencing hearing, the same jury that convicted the defendant of Devine's murder found the defendant eligible for the death penalty. The defendant waived the jury for the second stage of the hearing, and the trial court refused to impose the death penalty, imposing instead a sentence of 60 years in the Department of Corrections. *People v. Page*, 196 Ill. App. 3d 285, 553 N.E.2d 753 (1990).

In *Page I*, the defendant argued that the decision not to impose the death penalty in the defendant's first conviction in Will County for the death of Devine precluded the imposition of the death penalty. Our supreme court disagreed: "[A] sentencer's rejection of the death penalty in one case *** [does not] establish[ ][,] even on virtually the same record of aggravation and mitigation, the general inappropriateness of that penalty for other murders committed by the same defendant. The issue resolved in a capital sentencing hearing is not whether the defendant, in general, is deserving of the death penalty, but whether the defendant may, and should, be sentenced to death for a particular offense of murder." *Page I*, 155 Ill. 2d at 272-73, 614 N.E.2d at 1178. The court in *Page I* went on to hold:

"That the same evidence in aggravation and mitigation might be admitted at a subsequent sentencing hearing does not alter our view of the matter.

*** We conclude that the favorable decision rendered in the earlier case does not collaterally estop the State from seeking, and obtaining, the death penalty here." 155 Ill. 2d at 273-74, 614 N.E.2d at 1178.

Likewise, in *Page II*, our supreme court held that even where a previous court declined to impose the death penalty based on almost identical evidence in aggravation and mitigation, the principles of double jeopardy and collateral estoppel did not bar the imposition of the death penalty in a subsequent murder trial. *Page II*, 156 Ill. 2d at 285-86, 620 N.E.2d at 1154.

*Page II* involved the prosecution of the defendant for the murder of Charles Howell. After finding the defendant guilty, the jury found that there were insufficient mitigating factors to preclude the imposition of the death penalty. The defendant was sentenced to death, but the death sentence was stayed pending direct appeal. 156 Ill. 2d at 262, 620 N.E.2d at 343. The court in *Page II* pointed out that there was a difference in the first case, the Will County case, because even though the sentencing body heard about the other two murders in which the defendant was involved, it found that the defendant did not have a significant criminal history because the defendant had not yet been convicted of the other two murders. The *Page II* court stated,

"[W]here the sentencing body in the instant case considered, in addition to defendant's confessions to the other two murders he had committed, defendant's convictions for those murders, the aggravating evidence was substantially greater than that considered by the Will County court." 156 Ill. 2d at 286, 620 N.E.2d at 354. The same situation is presented in the instant case.

■ Here, defendant was prosecuted first for the murder of Aree Hunt. During sentencing, defendant's confessions to the four other murders were introduced, and evidence concerning each of the other four murders was presented, but defendant *had not been convicted* of any other murder. Furthermore, the characteristics of the five victims—gender, age, and background—varied from victim to victim. While it is true that they were all murdered within a one-mile radius of each other, the set of facts surrounding each murder was different. Accordingly, the only question decided in the first prosecution was whether defendant should be sentenced to death for the murder of Aree Hunt. The question whether defendant should be sentenced to death for any other of the four murders remains to be decided.

Defendant attempts to distinguish *Page I* and *Page II* on the basis that the murders there occurred and were prosecuted in different counties. The Devine murder occurred in Will County (*Page I*, 155 Ill. 2d at 242, 614 N.E.2d at 1164), and the Goodman and Howell murders occurred in Cook County (see *Page I*, 155 Ill. 2d at 238, 614 N.E.2d at 1160; *Page II*, 156 Ill. 2d at 262, 620 N.E.2d at 343). We are unpersuaded that this fact in any way makes a difference which would make *Page I* and *Page II* inapplicable in the instant case. Relying on *Page I* and *Page II*, we find that the earlier proceeding in which defendant was found guilty of the death of Aree Hunt but was not sentenced to death does not estop the State from seeking and obtaining the death penalty in the remaining four cases.

For the foregoing reasons, the judgment of the circuit court of St. Clair County is affirmed.

Affirmed.

RARICK and MAAG, JJ., concur.