2019 IL App (1st) 180060-U

No. 1-18-0060

Order filed December 31, 2019

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 14 CR 125 |
| | ) | |
| JUSTIN CAMPBELL, | ) | Honorable |
| | ) | Timothy Joseph Joyce, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE ELLIS delivered the judgment of the court.
Justices McBride and Howse concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Affirmed and remanded. Defendant's 12-year sentence was not excessive, nor did court penalize defendant for exercising his right to trial. Cause remanded so that defendant may raise errors in imposition of fines, fees, and costs pursuant to Illinois Supreme Court Rule 472(e) (eff. May 17, 2019).

¶ 2   Following a bench trial, defendant, Justin Campbell, was convicted of armed habitual criminal (AHC) (720 ILCS 5/24-1.7(a) (West 2012)) and sentenced to 12 years' imprisonment. On appeal, defendant argues that his sentence was excessive, and the fines, fees, and costs assessed

against him should be reduced. We affirm defendant's conviction and sentence and remand to the trial court to allow the defendant to raise alleged errors regarding his fines, fees, and costs.

¶ 3       Defendant was arrested and charged by indictment with one count of AHC, one count of aggravated discharge of a firearm, six counts of unlawful use of a weapon by a felon, and three counts of aggravated unlawful use of a weapon.

¶ 4       Prior to trial, defendant requested a conference pursuant to Illinois Supreme Court Rule 402. Ill. S. Ct. R. 402 (eff. July 1, 2012). The trial court recommended a sentence of nine years in exchange for a plea of guilty. Defendant rejected the offer. On a later date, the trial court offered a sentence of eight years and defendant also rejected that offer. The case proceeded to a bench trial.

¶ 5       Chicago police officer Christian Gaal testified that about 9:30 a.m. on November 21, 2013, he and his partner, Officer Gomez (whose first name is not in the record), were in a marked police vehicle near the 7400 block of South Vicennes Street. Gaal saw defendant firing a weapon towards a bus stop at the intersection of 74th Street and Vicennes. Defendant was about 125 feet away from him. Gaal activated the vehicle's police lights and proceeded towards defendant.

¶ 6       Defendant entered the front passenger side of a Ford Fusion, and the Fusion drove away. Gaal and Gomez followed the Fusion in their police vehicle. The Fusion traveled down 71st Street and entered onto the Dan Ryan Expressway. Eventually, the Fusion exited the expressway, turned down a one-way street into oncoming traffic, and crashed into a van. Defendant got out of the Fusion and ran towards a parking lot of an apartment building. Gomez observed defendant carrying a black object as he ran. Gomez chased defendant on foot, while Gaal drove around to the other side of the building. Gaal saw Gomez take defendant into custody.

¶ 7    Gaal contacted the manager of the apartment building and viewed the surveillance footage from the building. The footage showed defendant approaching a nearby dumpster before running to the back of the parking lot. Gaal searched the dumpster and found a black hat with a firearm inside of it. He and Gomez later went back to the bus stop and found five .380 caliber cartridges in the middle of the street.

¶ 8    On cross-examination, Gaal testified that he saw defendant fire four shots in the direction of the bus stop. He also acknowledged that at the preliminary hearing he incorrectly identified the vehicle that defendant entered as a Ford Taurus, instead of a Ford Fusion.

¶ 9    The State entered into evidence the surveillance video from the apartment building and photographs from both crime scenes.

¶ 10    Jennifer Hanna, an Illinois State Police forensic scientist, testified as an expert in firearms identification that she analyzed the handgun and the cartridges recovered at the scenes. She concluded that the firearm recovered was a .380 caliber semi-automatic pistol and the cartridges found near the bus stop were fired from that same firearm.

¶ 11    The parties stipulated that, if called, Chicago police officer Michael Mazurski would testify that he was the evidence technician that recovered and inventoried the firearm and the five .380 caliber cartridges. The parties also stipulated that, if called, Robert Berk, an expert in forensic science, would testify that he performed a gunshot residue test and determined that defendant may not have discharged the firearm and, if he did discharge the firearm, the particles were removed by activity, were not deposited, or were not detected by the test.

¶ 12    The State entered certified copies of defendant's convictions for unlawful use of a weapon and burglary. Defendant made a motion for a directed verdict, which the trial court denied.

¶ 13    The trial court found defendant not guilty of aggravated discharge of a firearm but guilty on all counts of AHC, unlawful use of a weapon by a felon, and aggravated unlawful use of a weapon. The trial court denied defendant's motion for a new trial.

¶ 14    At sentencing, the State argued in aggravation that defendant had a criminal background and was on parole at the time. In mitigation, defense counsel directed the court to the presentence investigation report (PSI) and noted that defendant did not have a stable upbringing and engaged in substance abuse. Counsel also pointed out defendant's youth, that he had two children, and that he made substantial efforts to maintain employment.

¶ 15    In announcing sentence, the trial court stated that it had reviewed the PSI and remarked upon defendant's childhood and his efforts to remain employed. In regard to the offenses committed, the court noted that it was "extraordinarily dangerous" for defendant to be shooting at a bus stop during the day in the city. The court also stated that it considered the statutory aggravating and mitigating factors and listened to the arguments of both parties. After merging the AHC counts, the court sentenced defendant to 12 years' imprisonment.

¶ 16    On appeal, defendant claims his 12-year sentence is excessive considering his youth, his struggles with drug addiction, his rehabilitative potential, and the fact that the trial court offered him a sentence of 8 years prior to trial. He requests that this court reduce the sentence or remand for a new sentencing hearing.

¶ 17    The Illinois Constitution requires a trial court to impose a sentence that balances the seriousness of the offense and the defendant's rehabilitative potential. Ill. Const. 1970, art. I, § 11; *People v. Lee*, 379 Ill. App. 3d 533, 539 (2008). To achieve such balance, the trial court must consider both aggravating and mitigating factors including: "the nature and circumstances of the

crime, the defendant's conduct in the commission of the crime, and the defendant's personal history, including his age, demeanor, habits, mentality, credibility, criminal history, general moral character, social environment and education." *People v. Maldonado*, 240 Ill. App. 3d 470, 485-86 (1992).

¶ 18 The trial court, not the reviewing court, is best situated to assess these factors, and we afford the trial court broad discretion. *People v. Sullivan*, 2014 IL App (3d) 120312 ¶ 51; *People v. Contursi*, 2019 IL App (1st) 162894, ¶ 23. This court will not substitute its judgment for that of the trial court merely because we would have weighed the sentencing factors differently, and we will alter a sentence only when it varies greatly from the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense. *Id*.; *People v. Snyder*, 2011 IL 111382, ¶ 36).

¶ 19 Here, we find that the trial court did not abuse its discretion in imposing a sentence of 12 years' imprisonment. Defendant was convicted of AHC, a Class X offense with a statutory sentencing range of 6 to 30 years' imprisonment. 720 ILCS 5/24-1.7(a); 730 ILCS 5/5-4.5-25(a) (West 2012). Defendant's sentence of 12 years was 6 years above the minimum and 18 years below the maximum. Because the court's sentence falls within the statutory range, we must presume it is proper. See *People v. Neasom*, 2017 IL App (1st) 143875, ¶ 49. Such a sentence will only be overturned upon "an affirmative showing that the sentence imposed greatly departs from the spirit and purpose of the law or is manifestly contrary to constitutional guidelines." *People v. Boclair*, 225 Ill. App. 3d 331, 335 (1992). Defendant is unable to make that showing.

¶ 20 Defendant argues that, in sentencing him to 12 years' imprisonment, the court did not consider the mitigating evidence, including his youth, his struggles with drug addiction, and his

rehabilitative potential. But the court specifically addressed defendant's employment efforts and his unstable childhood. The court also stated that it had reviewed the PSI and considered the factors in mitigation and aggravation. Although the trial court did not explicitly mention defendant's substance abuse or his youth at sentencing, the court is not required to recite every fact considered. *People v. Holman*, 2014 IL App (3d) 120905, ¶ 73. That said, we also note that our courts have not conclusively determined whether drug addiction is a mitigating or aggravating factor. *People v. Smith*, 214 Ill. App. 3d 327, 339-40 (1991); *People v. Scott*, 225 Ill. App. 3d 938, 941 (1992). As such, a trial court, then, may consider it in either fashion. *Smith*, 214 Ill. App. 3d at 340.

¶ 21 Nor does the presence of mitigating factors automatically entitle a defendant to the minimum sentence within the statutory range. *People v. Sharp*, 2015 IL App (1st) 130438, ¶ 133. The record here shows that in imposing sentence, the trial court explicitly noted how dangerous defendant's actions were in firing a gun at a bus stop during the day. See *People v. Jackson*, 2014 IL App (1st) 123258, ¶ 53 (stating that "the seriousness of the offense is considered the most important factor in determining a sentence" and "[a] sentencing court is not required to give greater weight to defendant's rehabilitative potential than to the seriousness of the offense"). As the record shows that the trial court considered the mitigating evidence, defendant has failed to make an affirmative showing that the court failed to giver proper weight to such evidence. Defendant is essentially requesting this court to reweigh the sentencing evidence, which we may not do. *People v. Knox*, 2014 IL App (1st) 120349, ¶ 46. We find no abuse of discretion in the 12-year sentence.

¶ 22 Defendant also argues that his 12-year sentence was punishment for having refused the court's pretrial offer and exercising his right to stand trial. He maintains that there was nothing presented in aggravation to justify the disparity between the plea offer and the sentence imposed.

¶ 23 We have repeatedly stated that "a defendant cannot be punished by the imposition of a heavier sentence merely because he exercises his constitutional right to be tried before an impartial judge or jury." *People v. Carroll*, 260 Ill. App. 3d 319, 348 (1992). But the courts have long recognized that a trial court may properly grant "dispositional concessions"—a lower sentence than the court might otherwise impose—in exchange for a plea of guilty. *People v. Moss*, 205 Ill. 2d 139, 171 (2001); *People v. Caballero*, 179 Ill. 2d 205, 218 (1997); *People v. Nutall*, 312 Ill. App. 3d 620, 637 (2000). The flip side, of course, is that if the defendant does *not* plead guilty and demands trial, those concessions no longer apply. Generally speaking, a harsher sentence following conviction at trial is not "punishment" for demanding trial; it is the loss of a more lenient sentence that the defendant willingly gave up.

¶ 24 Thus, we do not presume that a sentence was imposed as punishment merely because, following trial, a defendant was given a sentence greater than the one offered. *People v. Andrews*, 2013 IL App (1st) 121623, ¶ 19. Rather, there must be a clear showing in the record. *People v. Means*, 2017 IL App (1st) 142613, ¶ 21. A clear showing exists when a trial court makes explicit remarks concerning the harsher sentence or where the actual sentence is "outrageously higher" than the one offered during plea negotiations. *Carroll*, 260 Ill. App. 3d at 349. In making this determination, we consider the entire record, rather than focusing on a few words or statements of the trial court. *People v. Johnson*, 2018 IL App (1st) 153634, ¶ 18; see *People v. Ward*, 113 Ill. 2d 516, 526–27 (1986).

¶ 25 After considering the entire record, we find that defendant's sentence was not punishment for exercising his right to stand trial. The record shows that the court did not make any negative statements concerning defendant's decision to proceed to trial. Rather, as mentioned, the court

properly considered all factors in aggravation and mitigation. And defendant's sentence was not considerably greater than that offered before trial. See *Carroll*, 260 Ill. App. 3d at 349. We find no evidence that would "clearly show" the trial court's intention to punish defendant for exercising his right to trial. The trial court did not abuse its discretion with the 12-year sentence.

¶ 26    Finally, defendant argues that his fines and fees order should be corrected in several ways. Specifically, he says that several assessments are subject to offset by his presentence custody credit.

¶ 27    On February 26, 2019, while this appeal was pending, our Supreme Court adopted new Illinois Supreme Court Rule 472 (eff. March 1, 2019), which sets forth the procedure in criminal cases for correcting sentencing errors in, as relevant here, the "application of *per diem* credit against fines." Subsequently, on May 17, 2019, Rule 472 was amended to provide that "[i]n all criminal cases pending on appeal as of March 1, 2019, or appeals filed thereafter in which a party has attempted to raise sentencing errors covered by this rule for the first time on appeal, the reviewing court shall remand to the circuit court to allow the party to file a motion pursuant to this rule." Ill. S. Ct. R. 472(e) (eff. May 17, 2019). "No appeal may be taken" on the ground of any of the sentencing errors enumerated in the rule unless that alleged error "has first been raised in the circuit court." *Id*.,§ (c). Thus, pursuant to Rule 472, we "remand to the circuit court to allow [defendant] to file a motion pursuant to this rule," raising the alleged errors regarding fines and fees and *per diem* credit. *Id*.,§ (e).

¶ 28    Accordingly, the fines and fees issue is remanded to the trial court pursuant to Rule 472(e), and the judgment of the circuit court of Cook County is affirmed in all other respects.

¶ 29    Affirmed and remanded as to fines, fees, and costs.